**CULLEN CENTER BANK & TRUST, Trustee of the Betty Anne Franke Trust, Appellant,**

v.

**TEXAS COMMERCE BANK, N.A., Allen L. Jogerst and C.W. Sunday, Co-Trustees of the Louise Jarrett Moran Trust, Appellees.**

No. A14–92–00235–CV.

Court of Appeals of Texas, Houston [14th Dist.].

Nov. 5, 1992.

Rehearing Denied Nov. 25, 1992.

Michael J. Cenatiempo, Sharon Brand Gardner, Houston, for appellant.

Rodney C. Koenig, Jack W. Lawter, Jr., Houston, for appellees.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

### J. CURTISS BROWN, Chief Justice.

This is an appeal from a judgment granting partial distribution of the Estate of William T. Moran, deceased. The Trustees of the Louise Jarrett Moran Trust (LJM Trust), appellees, filed an application, and an amended application, for partial distribution of this Estate. Cullen Center Bank & Trust, Trustee of the Betty Anne Frank Trust, appellant, was the only beneficiary to object to the partial distribution. After a hearing on the matter, the trial court granted the amended application. Appellant raises 37 points of error, complaining the trial court erred in the construction of the will, in ignoring the prior settlement agreement, in denying its motion to modify, in refusing several of its proposed findings of fact, and because there is factually and legally insufficient evidence to support the granting of the application. We affirm.

William T. Moran died on November 30, 1983, a resident of Harris County, Texas. His Estate consisted of approximately $85 million in assets and $200,000 in debts. His last will and testament and seven codicils were admitted to probate on December 20, 1983. The co-executors qualified and continued to serve the Estate until 1990 when they resigned pursuant to a settlement agreement. The will was construed in a declaratory judgment action because it bequeathed more than 100% of the Estate's residue to the residual beneficiaries. Under Paragraph 1(e)(4), it was determined that 26% of the Estate was to pass to the LJM Trust as a marital trust for the benefit of Louise Jarrett Moran. Under the provisions of the will dealing with the LJM Trust it was mandatory that Louise J. Moran receive the income from her trust.

There was an additional provision in the will concerning the LJM Trust under paragraph 20 which stated:

Notwithstanding anything in the foregoing to the contrary, I expressly provide that in the event that my wife shall survive me, the share of my estate devised to the Trustee of "THE LOUISE JARRETT MORAN TRUST" pursuant to the provisions of subparagraph (4) of paragraph (e) of Article 1 hereof shall be free from and undiminished by any inheritance taxes or other taxes payable by reason of my death, and, similarly, the bequest made pursuant to the provisions of subparagraph (1) and (2) of paragraph (e) of Article 1 hereof shall be free from and undiminished by any inheritance taxes or other taxes payable by reason of my death.

This provision was construed to mean that the LJM Trust was to receive its 26% from and be undiminished by estate and inheritance taxes, *and* any interest or penalties thereon payable to the Internal Revenue Service (IRS).

The co-executors of the Estate elected to pay the estate taxes under a deferment plan provided in section 6166 of the Internal Revenue Code. *See* I.R.C. § 6166 (1984). In this manner the Estate did not have to pay all the taxes at once and could deduct the interest payments made on the unpaid tax. The Estate was entitled to a substantial U.S. estate tax benefit in the form of a marital deduction for the LJM Trust's portion of the Estate. The terms of the will, including Paragraph 20, were consistent with the marital deduction requirement that the marital gift "be free and clear of any taxes, interest and so forth for estate purposes." Thus, there

was nothing in Paragraph 20 which would disqualify the Estate for the deduction as long as the co-executors properly complied with the provision.

In order to protect the LJM Trust's portion of the residuary estate from the payment of any of the taxes or interest on those taxes as the Will provided, the co-executors set up the Louise J. Moran Pro Rata Account (LJM Pro Rata Account) at First City National Bank. This account was set up on the advice of several legal experts in the area of estate planning and probate as a method to prevent the diminishment of the LJM Trust's portion of the residuary estate and to protect the marital deduction. The co-executors were to pay into the LJM Pro Rata Account $0.26, as the LJM Trust's share, for every $0.74 paid by the Estate in taxes and interest or penalties on such taxes. The beneficiaries of the Estate or their legal representatives were informed of the LJM Pro Rata Account and its purpose. The account was reflected on the Audited Financial Statements of the Estate. Additionally, on the monthly statements of the Estate's cash and short term investments, the funds were deducted from the Estate's cash and shown as cash belonging to the LJM Pro Rata Account. In this manner the funds were not taxable at the Estate level.

In 1986, 1987, and 1988, all of the income amounts generated by the LJM Pro Rata Account were distributed to the LJM Trust, without objection by any of the beneficiaries, including appellant. The LJM Trust or Louise J. Moran, individually, paid the income taxes on the income distributed to it in these years. Although a decision was made by the co-executors to distribute the income to the LJM Trust again in 1989, the distribution was never made. In 1990, the income from the LJM Pro Rata Account was also not distributed but was retained in the account by the Estate. The executors' performance of their duties to the Estate was somewhat impaired at this time due to their involvement in, and concentration on, a lawsuit involving all three co-executors, and Betty Anne Franke and the Franke family, as intervenors. As part of the settlement agreement for this suit, all three co-executors had to resign from their positions making the uniform performance of the Estate's administrative duties difficult.

Neither the Estate nor the LJM Trust paid the income taxes on the income generated by the account in the 1989 and 1990. However, in 1992 the trial court authorized the administrator to enter into a closing agreement with the IRS and pay these taxes out of the LJM Pro Rata Account. The LJM Trust was also ordered to pay the taxes on the income from the account for 1991. In the fall of 1991, the LJM Trust's amended application for partial distribution of the funds in the LJM Pro Rata Account was granted.

In points of error five, eight, eleven, fifteen, and thirty-six, appellant complains the trial court's findings of fact numbers two, three, five, and ten are against the great weight and preponderance of the evidence. Appellant's point of error thirty-six is a reworded duplication of its point of error eleven. Among appellant's other thirty-two points of error, it alleges there is no evidence and insufficient evidence to support all of these same findings of fact.

■ As a procedural aside for appellant's benefit, a point of error complaining the evidence is insufficient to support a finding is proper when an appellant is attacking an adverse finding regarding an issue on which appellant *did not have the burden of proof. See* 4 ROY W. MCDONALD, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 18.14 (1971); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX.L.REV. 361, 362–63 (1960); Michol O'Connor, *Appealing Jury Findings,* 12 HOUS.L.REV. 65, 66–67 (1974). On the other hand, a point of error complaining the finding is against the great weight and preponderance of the evidence is proper when an appellant is attacking an adverse finding regarding an issue on which appellant *had the burden of proof. See* 4 ROY W. MCDONALD, TEXAS CIVIL PRACTICE § 18.14; Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX.L.REV. at 362–63;

O'Connor, *Appealing Jury Findings*, 12 HOUS.L.REV. at 66–67. Since each of these complaints is an attack on the factual sufficiency of the evidence, it is improper on appeal to raise both complaints against the same finding. Therefore, we will not address points of error five, eight, eleven, fifteen, and thirty-six.

In points of error one, two, nineteen through twenty-three, twenty-eight through thirty-three, and thirty-seven, appellant complains the trial court erred in ordering a distribution in the amount of $12,670,728, instead of $10,178,743.56, to the LJM Trust. Appellant alleges the trial court erred in making conclusions of law numbers two, three, four, and five. Further, appellant contends the trial court erred in failing to make various conclusions of law, or in the alternative, in failing to grant its motion for new trial in order to determine what expenses and taxes the LJM Pro Rata Account should be assessed.

Appellant's combined argument under all of these points of error addresses the construction of the will. As appellant is well aware, Mr. Moran's will was construed by Judge Bear in a declaratory judgment signed October 23, 1985. No appeal was taken from that judgment. The LJM Trust did not petition the trial court for any additional construction of the terms of the will. Instead, the LJM Trust filed an application and amended application for partial distribution of funds from the Estate. The purpose of the LJM Pro Rata Account and to whose benefit the funds accrued, not the construction of the will, is before this Court.

■ Appellant's alternative argument as to point of error thirty-seven is that its new trial should have been granted because the LJM Pro Rata Account had no withdrawals for administrative fees and its income taxes. The evidence established that the LJM Trust or Louise J. Moran paid the income taxes on the income earned by the account during the years those funds were properly distributed. As to the funds not properly distributed, the trial court ordered the administrator to accept the IRS's proposed closing agreement and pay the $282,694, plus interest and penalties out of the LJM Pro Rata Account. The trial court's order of disbursement requires the LJM Trust to pay all of the income tax, and any interest and penalties due on the income from the LJM Pro Rata Account for the year 1991. Additionally, the evidence established that the LJM Trust has always paid its 26% pro rata share of the Estate's administrative costs. Therefore, a new trial is not necessary to calculate or assess administrative costs or income taxes. We overrule points of error one, two, nineteen through twenty-three, twenty-eight through thirty-three, and thirty-seven.

In points of error three, four, six, seven, nine, ten, eighteen, and thirty-five, appellant contends the evidence is legally and factually insufficient to support findings of fact numbers, two, three, five, and fifteen. Appellant cites one case in his argument under all these points of error.

■ We will review the trial court's findings by the same standards used to review jury findings since the record contains a complete statement of facts. *Valencia v. Garza*, 765 S.W.2d 893, 896 (Tex. App.—San Antonio 1989, no writ); *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). In reviewing the legal sufficiency of the evidence or a "no" evidence point, we must consider only the evidence and inferences tending to support the court's findings and disregard all evidence and inferences to the contrary. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). After such a review of the favorable evidence, if we find any evidence of probative force to support the findings, then they must be upheld. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.*, 774 S.W.2d 666, 668 (Tex.1989). In considering appellants' complaint of factually insufficient evidence, we must review all of the evidence and determine if the weight of the record supports the court's findings. *Plas–Tex, Inc. v. United States Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989); *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951).

We will begin with the trial court's finding of fact number two which states:

2. In compliance with Article 20 of the Last Will and Testament of W.T. Moran and Codicils thereto (the "Will") and the order of the Court construing this provision, the Executors of the Estate established the Moran Pro Rata Account for the benefit of Louise Jarrett Moran Trust (the "Set Aside Account").

■ The requirements of article 20 of Mr. Moran's will have already been discussed. None of the parties question the fact that the LJM Trust's 26% share is required by the will to be taken undiminished by estate and inheritance taxes, and any interest and penalties thereon payable to the IRS. The uncontroverted testimony of Patrick Moran, one of the original co-executors of the Estate, and John Hopwood, Louise J. Moran's attorney, is that the LJM Pro Rata Account was the method chosen by the co-executors to comply with this requirement in the will. Both of these witnesses testified the LJM Pro Rata Account was set up for the benefit of Louise J. Moran in order to protect her Trust's marital deduction, and there was no testimony to the contrary. There is ample evidence to support finding of fact number two.

Next, we will address finding of fact number three which states:

3. The Executors set up the Set Aside Account on the expert legal advice of several attorneys, including C. Boone Schwartzel of Vinson & Elkins, Rodney C. Koenig of Fulbright & Jaworski, Richard Cruse of Woodard, Hall & Primm and Kenneth McLaughlin, Jr. of Mayor, Day & Caldwell. As required by the Will, the Set Aside Account was established so that the twenty-six percent of the residuary estate due the Louis Jarrett Moran Trust (the "Trust") would not be diminished by estate or inheritance taxes or interest on such taxes. In each year that the Executors made an estate tax payment or an interest payment, for each $0.74 paid in taxes or interest on such taxes, the Set Aside Account received a payment of $0.26 or was due a payment of $0.26.

■ The testimony of Patrick Moran was again uncontroverted that the co-executors were advised to set up the LJM Pro Rata Account by the legal experts listed in this finding of fact. Mr. Hopwood gave uncontroverted testimony that C. Boone Schwartzel of Vinson & Elkins recommended setting up the LJM Pro Rata Account as the most efficient and effective of the two methods available for preserving the marital deduction. The testimony of Patrick Moran and Mr. Hopwood was also uncontroverted that the account was set up to meet the will's requirement regarding the LJM Trust's 26% share.

Further, the evidence was uncontroverted that the account was initially funded with, and was thereafter funded or due, $0.26 for each $0.74 in taxes, or interest and penalties thereon, paid by the Estate. Charles L. Ehrhardt, III, the vice-president and trust officer for the Estate Administrator, River Oaks Trust Company, testified his company was "attempting to transfer funds from the main estate account to the set aside account, to actually fund it in accordance with past practices." He further stated, "[t]he amount in the set aside account comports with the method of funding," and was funded "strictly to the method of calculating the set aside amount that had been used since the account was first opened." There is ample evidence to support finding of fact number three.

We now address the trial court's finding of fact number five which states:

5. There was a pattern of distributing the income from the Set Aside Account to the Trust. In 1986, 1987 and 1988 all the income generated by the Set Aside Account, $507,557.12, was distributed to the Trust. In June, 1986, $68,005.12 of income was distributed, $164,382.00 of income was distributed in July, 1987, and $275,170.00 of income was distributed to the Trust in July, 1988. In December 1988, the Executors, at an executors' meeting, decided to once again distribute the income to the Trust in 1989. However, apparently due to distractions by liti-

gation relating to the Estate or clerical error, the distribution was never made.

■ The evidence was uncontroverted that the LJM Trust received three distributions, one in 1986, one in 1987, and one in 1988. There was conflicting evidence on whether all three of these distributions were from the LJM Pro Rata Account, or if the first two of these distributions were from the set aside account and the third was from the Estate account. The testimony of Gary Arnett, President of Vision Labs Information Systems and a CPA, however, was uncontroverted that all three distributions were in the amount of the income accrued on the LJM Pro Rata Account. The evidence also establishes that the parties are in agreement on the actual dollar amounts of these distributions.

Additionally, the uncontroverted testimony of Patrick Moran was that the co-executors agreed at an executors' meeting in December 1988 to distribute the income from the account to the LJM Trust in 1989. Notes from a December 19, 1988 meeting of the W.T. Moran Estate were introduced into evidence. These notes under the heading "XII. Louise Moran Pro Rata Account," reflect the following decision was made, "[o]btain amount of income cash and add to her January distribution." The only explanation offered at the hearing for the failure to distribute the income was that the co-executors were distracted by the Estate litigation, or there could have been a change in personnel or a clerical error. There is ample evidence to support finding of fact number five.

Finally, the trial court's finding of fact number fifteen states:

15. Cullen Center Bank and Trust was the only beneficiary of the Estate who objected to a distribution of the Set Aside Account to the Trust. Cullen Center Bank & Trust admits that the principal in the Set Aside Account is the property of the Trust.

■ The transcript reveals that appellant, "Cullen Center Bank & Trust, Houston, Texas, Trustee of the Betty Anne Franke Trust[,]" was the only beneficiary to file a contest to the LJM Trust's application for partial distribution. In its Second Amended Motion to Instruct Administrator to Determine and Calculate "Set Aside Account" and First Amended Limited Contest and Special Exceptions to Application for Partial Distribution, appellant urged that the LJM Trust was not entitled to the set aside account.

However, appellant's attorney, in questioning Mr. Ehrhardt, stated appellant had "admitted that Mrs. Moran's trust is due a figure of $10,178,743.55." He then asked Mr. Ehrhardt, "[s]o, what's in play here is roughly a little over $2 million," and Mr. Ehrhardt replied, "[i]n terms of interest, yes sir." Appellant's attorney went on to ask:

Q: If the 10,178,743.55 figure is ordered by this Court to be paid to Mrs. Moran's trust, and further if the *rest of that pro rata account* is then ordered to be distributed to the residual beneficiaries at some point in time.... (emphasis added)

Later, appellant's own witness, Larry Bass, Betty Anne Franke's attorney, stated that he had become familiar with the pro rata account and "it seem[ed] to [him] that the dispute is over the income element in that account...."

In his closing argument, appellant's attorney told the judge the LJM Trust was entitled to $10,177,822.39 (essentially $0.26 for each of the $30,412,234 tax dollars paid less the $507,557.12 disbursed to the LJM Trust), and the judge asked him what he thought about the interest on the account. Appellant's attorney told the judge "we believe the interest belongs to the remainder. Mrs. Moran's trust would get 26 percent of that." The evidence heard by the trial judge supports that appellant was only contesting the distribution of the income on the LJM Pro Rata Account. Thus, there is sufficient evidence to support the trial judge's finding that appellant had admitted the principal in the account belonged to the LJM Trust. We overrule appellant's points of error three, four, six, seven, nine, ten, eighteen, and thirty-seven.

■ In points of error thirteen and fourteen, appellant complains the trial court's finding of fact number ten is not

supported by legally or factually sufficient evidence. In support of these points of error, appellant cites us no authority.

The trial court's finding of fact number ten states:

> The Settlement Agreement entered into and signed on February 11, 1990, by all the beneficiaries of the Estate, including the Betty Anne Franke Family, specifically addressed the Set Aside Account in Article 10(c) and acknowledged the obligation to the Trust.

Specifically, appellant alleges that all beneficiaries of the Estate did not enter into and sign the settlement agreement, and the agreement did not specifically address the LJM Pro Rata Account.

As previously discussed, when reviewing a no evidence complaint, we consider only the evidence and inferences tending to support the court's finding and disregard all evidence and inferences to the contrary in order to determine if any evidence of probative force supports the finding. *Best,* 786 S.W.2d at 671; *Responsive Terminal Sys., Inc.,* 774 S.W.2d at 668. For a factual sufficiency review we will consider all of the evidence and determine if the finding is erroneous. *Plas–Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989); *In re King's Estate,* 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951); *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 275 (Tex. App.—Amarillo 1988, writ denied).

A comparison of the approximately 120 beneficiaries of the Estate against the ten signatures on the settlement agreement makes it obvious the evidence is indeed legally and factually insufficient to support a finding that all beneficiaries entered into and signed the settlement agreement. Additionally, a review of the settlement agreement reveals only a single mention of the offset due the LJM Trust when estate or inheritance taxes are paid. In a section discussing the purchase of Estate assets by the "Family Group," the agreement states:

> the Family Group within fourteen (14) days of the exercise of the option must satisfy the administrator that each of the members of the Family Group has the ability to post with the administrator cash or other security which is acceptable to the administrator in [an] amount sufficient *to pay his or her respective pro rata share of all unpaid estate and inheritance taxes (including any interest accrued thereon), and the Louise Moran offset....* (emphasis added)

Obviously this statement does not expressly discuss the LJM Pro Rata Account. Thus, the evidence is also legally and factually insufficient to support a finding that the settlement agreement specifically addressed the "Set Aside Account."

■ Although appellees would have been better off drafting finding of fact number ten in a more realistic manner, these defects in its language are not reversible error. The key party to this suit, Betty Anne Franke and the Franke family, did enter into and sign the settlement agreement. Further, the settlement agreement by its language does acknowledge the obligation that the LJM Trust's share of the Estate not be diminished by the payment of estate or inheritance taxes, and any interest or penalties thereon. The LJM Pro Rata Account was simply an administrative method utilized by the co-executors to insure that obligation was met and the marital deduction preserved. Thus, by inference the LJM Pro Rata Account is addressed in the settlement agreement. The facts vital to this finding of fact are *supported by legally and factually sufficient evidence.* We overrule points of error thirteen and fourteen.

■ In points of error twelve, sixteen and seventeen, appellant complains of the speculative nature of findings of fact numbers seven, twelve, and thirteen.

Findings of fact seven, twelve, and thirteen state:

> 7. The Trust paid the income taxes on the income that was distributed to the Trust in years 1986, 1987 and 1988. However, the Estate *should* have paid the income taxes for years 1989 and 1990, because the income was not distributed to the Trust. Because of accounting or clerical errors, the income earned by the Set Aside Account for 1989 and

1990 was not reported on the Estate's Federal Income Tax Returns. But such errors have now been reported to the Internal Revenue Service and the appropriate amount of tax, interest and penalties will be paid by the Estate. Therefore, any income taxes, interest and/or penalties that the Estate incurred or incurs as a result of the income earned by the Set Aside Account for the years 1985 through 1991 *should* be reimbursed to the Estate by the Trust. (emphasis added)

12. The Set Aside Account in no way increases or enhances the residual share of the Estate passing to the Trust. If the Set Aside Account had not been established, the residual share of the Estate passing to the Trust *would have been* improperly decreased by the estate tax payments and the provisions of the Will *would not have been satisfied.* (emphasis added)

13. The administration expenses of the Estate have been proportionately borne by all the residuary beneficiaries, including the Trust. If any of the administration expenses were assessed against the Set Aside Account, the Trust's residual share *would* be charged with such expenses twice. Therefore, no such expenses *should* be assessed against the Set Aside Account. (emphasis added)

Appellant alleges that in making findings of fact the trial court is not to speculate about what should have happened or might have happened. Appellant cites us no authority for this proposition. The use of the words *should or would* in no way make these findings speculative. We overrule points of error twelve, sixteen, and seventeen.

In point of error twenty-four, appellant alleges the trial court should have adopted all of its proposed finding of fact number fourteen. The portion of the proposed finding that was denied by the trial court stated:

14. Federal Income Taxes assessed against the income of the sub-account were paid by the estate resources other than funds in the estate sub-account. In addition, there exists a substantial liability of the estate to the Internal Revenue Service for unpaid Federal Income Taxes on income generated by the sub-account.

Appellant cites no authority under this point of error.

Patrick Moran and Gary Arnett both testified that disbursements in the amount of the income earned on the LJM Pro Rata Account were made to the LJM Trust in 1986, 1987, and 1988. Patrick Moran testified that depending on whether the funds were then disbursed from the LJM Trust to Louise J. Moran personally, either the Trust or Mrs. Moran paid the income taxes on the account's income for those years. Mr. Ehrhardt testified he did not know how these income taxes were paid and that one would have to ask Ernst & Young.

Further, Mr. Ehrhardt stated that he had sent the IRS, and expected the IRS to accept, a figure of $282,694 as the amount of tax due on the income not properly distributed or reported in the years 1989 and 1990. The trial court has ordered the administrator to accept the closing agreement proposed by the IRS and pay the $282,694, plus interest and penalties out of the LJM Pro Rata Account. The disbursement order provides for the LJM Trust to pay all of the income tax liability plus interest and penalties on the income generated by the LJM Pro Rata Account for the year 1991. The trial court properly refused to make appellant's finding of fact number fourteen. We overrule appellant's point of error twenty-four.

In point of error twenty-five, appellant contends the trial court erred in not adopting all of its proposed finding of fact number fifteen. The portion of the finding denied by the trial court "essentially stated that the co-executors had already paid the LJM Trust a total of $507,557.12 in partial satisfaction of the provisions of Paragraph 20."

Appellant alleges its proposed finding is essentially the same as finding of fact number five made by the trial court. Appellant cites us no authority for the proposition that the trial court is required to make repetitive or duplicitous findings of fact.

In fact, appellant cites us no authority at all under this point of error. We overrule appellant's point of error twenty-five.

In points of error twenty-six and thirty-four, appellant complains the trial court erred in not adopting its proposed finding of fact number thirty and conclusion of law number eleven. Both of these proposed paragraphs stated there was no written or oral agreement as to whether the LJM Trust is entitled to income earned by the LJM Pro Rata Account.

The trial court had already made finding of fact number four which addressed the issue covered by appellant's proposed finding and conclusion. In a somewhat misleading argument to the Court under these points of error, appellant quoted only a portion of the trial court's finding of fact number four in its brief. However, a review of the record reveals finding of fact number four in its entirety states "[i]t was the understanding between the Executors and Mrs. Moran that the Trust would receive all income earned by the Set Aside Account. There was no formal written agreement between the Executors and Mrs. Moran and[/]or her trust concerning the Set Aside Account at the time it was created." The trial court's finding is supported by the evidence and appellant has not attacked it on appeal. A portion of appellant's proposed finding and conclusion is directly contradictory to the trial court's finding of fact, while the remainder is repetitious. Once again appellant cites no authority for any proposition under these points of error. The trial court properly denied appellant's finding of fact number thirty and conclusion of law number eleven. We overrule points of error twenty-six and thirty-four.

■ In point of error twenty-seven, appellant complains the trial court erred in not adopting its proposed finding of fact number thirty-three and conclusion of law number twelve. According to appellant, the proposed finding stated "that Louise J. Moran and the trustees of her trust waived, and are estopped from *waiving*, ownership[,]" a somewhat conflicting statement. In reality the finding states "Louise

J. Moran and the trustees of her trust waived, and are estopped from *claiming*, ownership of more than an undivided 26 percent of the sub-account." Appellant cites us to the authorities "at page 22 of [its] Brief." However, there are no authorities cited on page 22 of its brief.

Since the LJM Pro Rata Account was set up for the benefit of Louise J. Moran, we fail to see how she could have waived her right to 100% of the account. Further, the trial court stated in its unchallenged conclusions of law numbers two and three that the LJM Trust was only asking for what it was entitled to under the will, and the Trust was entitled to all principal and undistributed income in the account. The trial court properly denied proposed finding of fact number thirty-three.

■ Proposed conclusion of law number twelve stated "[n]either the trustees nor the beneficiaries of the Betty Ann Franke Trust have waived, or have been estopped, from any rights they may have in the assets and accrued income contained in the sub-account." By finding that the LJM Trust was entitled to all of the principal and undistributed income in the LJM Pro Rata Account, it is obvious that the trial court did not find that the Betty Ann Franke Trust had any interest in or rights to the assets and accrued income in the account. Thus, a conclusion of law that the Betty Anne Franke Trust had not waived a right it did not have would be useless. Additionally, the trial court did make finding of fact thirty-two using the exact language of proposed conclusion of law number twelve. To this finding of fact, the trial court added that Patrick Moran had discussed the account with Betty Anne Franke and her family, and the account was shown on the audited financial statements and distribution analysis schedules sent to all beneficiaries or their counsel. The evidence supports such a finding of fact and the trial court properly denied proposed conclusion of law number twelve. We overrule appellant's point of error thirty-seven.

The judgment of the trial court is affirmed.