**Affirmed and Memorandum Opinion filed November 14, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00559-CV

**SPRING BRANCH INDEPENDENT SCHOOL DISTRICT, CITY OF HOUSTON, AND HARRIS COUNTY, TEXAS, Appellants**

**V.**

**SOUTHWEST PRECISION PRINTERS, L.P., Appellee**

**On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2016-41614**

## MEMORANDUM OPINION

This appeal arises from a suit to collect delinquent taxes on business personal property. On June 17, 2016, appellant Spring Branch Independent School District ("District") filed suit against Page International Communications, L.L.C. ("Page"). Appellants the City of Houston ("City") and Harris County, Texas ("County"), subsequently intervened. On August 29, 2016, a Chapter 11 involuntary bankruptcy proceeding was filed as to Page. At that time, appellants learned Page and appellee

Southwest Precision Printers, L.P. ("Southwest") had entered into a Royalty Agreement[1] ("Agreement") on March 30, 2016, for the purchase of certain assets. The District, the City and the County added Southwest as a defendant on the theory of successor liability pursuant to section 31.081 of the Tax Code and dismissed Page. *See* Tax Code § 31.081. Section 31.081 provides:

> (a) This section applies only to a person who purchases a business, an interest in a business, or the inventory of a business from a person who is liable under this title for the payment of taxes imposed on personal property used in the operation of that business.
>
> (b) The purchaser shall withhold from the purchase price an amount sufficient to pay all of the taxes imposed on the personal property of the business, plus any penalties and interest incurred, until the seller provides the purchaser with:
>
>> (1) a receipt issued by each appropriate collector showing that the taxes due the applicable taxing unit, plus any penalties and interest, have been paid; or
>>
>> (2) a tax certificate issued under Section 31.08 stating that no taxes, penalties, or interest is due the applicable taxing unit.
>
> (c) A purchaser who fails to withhold the amount required by this section is liable for that amount to the applicable taxing units to the extent of the value of the purchase price, including the value of a promissory note given in consideration of the sale to the extent of the note's market value on the effective date of the purchase, regardless of whether the purchaser has been required to make any payments on that note.
>
> (d) The purchaser may request each appropriate collector to issue a tax certificate under Section 31.08 or a statement of the amount of the taxes, penalties, and interest that are due to each taxing unit for which the collector collects taxes. The collector shall issue the certificate or statement before the 10th day after the date the request is made. If a collector does not timely provide or mail the certificate or statement to the purchaser, the purchaser is released from the duties and liabilities

---

[1] The contract defines the "royalty" in a nonstandard sense, *i.e.*, something other than an intellectual-property or oil-and-gas interest. This unusual definition does not affect our decision.

imposed by Subsections (b) and (c) in connection with taxes, penalties, and interest due the applicable taxing unit.

(e) An action to enforce a duty or liability imposed on a purchaser by Subsection (b) or (c) must be brought before the fourth anniversary of the effective date of the purchase. An action to enforce the purchaser's duty or liability is subject to a limitation plea by the purchaser as to any taxes that have been delinquent at least four years as of the date the collector issues the statement under Subsection (d).

(f) This section does not release a person who sells a business or the inventory of a business from any personal liability imposed on the person for the payment of taxes imposed on the personal property of the business or for penalties or interest on those taxes.

(g) For purposes of this section:

> (1) a person is considered to have purchased a business if the person purchases the name of the business or the goodwill associated with the business; and

> (2) a person is considered to have purchased the inventory of a business if the person purchases inventory of a business, the value of which is at least 50 percent of the value of the total inventory of the business on the date of the purchase.

Tex. Tax Code § 31.081. Appellants contend Southwest purchased Page's name and goodwill through the Agreement. *See* Tex. Tax Code § 31.081(g)(1).[2] Therefore, appellants assert, Southwest is liable for an aggregate amount of $220,713.93 (the taxes, penalties, and interest assessed against Page for tax years 2015 and 2016). *See* Tex. Tax Code § 31.081(g)(1). Following a bench trial, a take-nothing judgment in favor of Southwest was signed. Appellants timely brought this appeal.

In a single issue, appellants argue the trial court's judgment is against the great weight and preponderance of the evidence. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) ("When a party attacks the factual sufficiency of an

---

[2] Appellants do not contend Southwest purchased sufficient inventory to be liable for Page's delinquent taxes. *See* Tex. Tax Code § 31.081(g)(2).

adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence."); *see also Cullen Ctr. Bank & Tr. v. Texas Commerce Bank, N.A.*, 841 S.W.2d 116, 121 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (same). But this is a case involving the interpretation of a contract.

Appellants' brief states the Agreement unambiguously establishes Southwest purchased Page's name and goodwill. Although Southwest does not expressly claim the contract is ambiguous, it does assert there were disputed issues of fact that were resolved against appellants. The trial court heard testimony and the judgment states that "[a]fter review of the evidence and hearing arguments of counsel, the Court is of the opinion . . ." Thus, the record indicates—despite the absence of any express findings or conclusions—that the trial court determined the Agreement was ambiguous and it resolved that ambiguity in Southwest's favor. However, we are not bound by that determination.

Whether a contract is ambiguous is a question of law, subject to *de novo* review. *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 705 (Tex. 2008). When construing a written contract, the court's primary duty is to determine the intent of the parties as expressed in the instrument. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). To make that determination, the court examines all parts of the contract in light of the circumstances surrounding its formation. *Columbia Gas Transmission Corp. v. New Ulm Gas*, 940 S.W.2d 587, 589 (Tex. 1996). A contract is not ambiguous if it can be given a definite or certain meaning as a matter of law. *Id*. "On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, which creates a fact issue on the parties' intent." *Id*. A disagreement among the parties as to a contract's meaning is not conclusive. *See*

4

*Lane-Valente Indus. (Nat'l), Inc. v. J.P. Morgan Chase, N.A.*, 468 S.W.3d 200, 205 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Also, parol evidence is not admissible for the purpose of creating an ambiguity. *Zurich Am. Ins. Co. v. Hunt Petrol. (AEC), Inc.*, 157 S.W.3d 462, 465 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

As evidence that Southwest purchased Page's name, appellants rely upon several sections of the Agreement. Appellants contend that Southwest purchased Page's name based on section 5.08:

> 5.08 <u>The Page/International Communications Company Name</u>. As part of the Acquisition, Seller hereby transfers to Buyer all rights to the "Page/International Communications" name, branding and related marks and logos in connection with its operation of the Business, to the extent such rights are owned by Seller. Notwithstanding anything herein to the contrary, Seller makes no representation or warranty as to its rights (including as to title or any non-infringement) with respect to such names, marks, branding and logos. Seller shall no longer conduct business under the name "Page/International Communications"; provided, however, that Seller shall have the right to use the transferred marks for general business purposes with respect to the winding down of Seller's business including, without limitation, in its collection of pre-Closing accounts receivable and payment of accounts payable.

Appellants point to the following recital at the beginning of the Agreement:

> WHEREAS, Seller wishes to sell and assign to Buyer, and Buyer wishes to purchase from Seller the Purchased Assets (as defined herein) (the "Acquisition"), subject to the terms and conditions set forth herein.

Additionally, appellants refer to section 6.05, which states:

> Section 6.05 <u>Entire Agreement</u>. This Agreement and the other Transaction Documents, and the Disclosure Schedules, constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter.

5

Appellants contend the preliminary recital "defines" all assets purchased by Southwest from Page as the "Acquisition." Section 5.08 then states Page transfers all rights to its name to Southwest as part of the acquisition. Lastly, section 6.05 provides the Agreement supersedes all other agreements.

Taken as a whole, appellants contend, the Agreement establishes that Southwest purchased Page's name. However, section 1.01(a) of the Agreement states:

> Except for the Purchased Assets, Buyer is not purchasing any other assets of Seller and, except as otherwise provided below, is not assuming any liabilities or obligations of Seller.

Subsection (a) describes the "Purchased Assets" as follows:

> . . . all of Seller's right, title and interest in Seller's: (i) customer files and materials (including, without limitation, printergy [sic] files, PSI files, file server archives) with respect to the Royalty Customers (as defined below) (collectively, the "Book of Business"), (ii) the Seller's server or servers, computers and workstations presently used by Seller for its Book of Business at the Houston location of the Business, along with all cords, mice and other accessories connected thereto and software contained therein (all to the extent such software is transferable without payment of any fee by Seller), as listed on Section 1.01(a)(ii) of the disclosure schedules (the "Disclosure Schedules") attached hereto (the "Purchased Equipment"), (iii) all customer-related inventory, (iv) all work in progress as of the close of business on the Closing Date, and (v) the printing supplies listed on Section 1.01(a)(v) of the Disclosure Schedules (collectively, the "Supplies" and together with the Book of Business and the other items listed above, the "Purchased Assets"). . . .

Thus, "Purchased Assets" includes (1) the Book of Business; (2) the Purchased Equipment; (3) all customer-related inventory; (4) all work in progress; and (5) the printing supplies. It does not include Page's name.

Furthermore, section 1.06(b) of the Agreement provides:

> (b) On the Closing Date, the Buyer shall pay to Seller a total amount equal to one hundred eighty-two thousand dollars ($182,000.00), comprised of the following:
>
>> (i) An amount equal to thirteen thousand dollars ($13,000.00) for the Purchased Equipment (the "Equipment Payment");
>>
>> (ii) An amount equal to eighty-four thousand dollars ($84,000.00) (the "Supplies Payment"), which is subject to adjustment after the Closing as provided in Section 5.09(a);
>>
>> (iii) The Defrayment Payment; and
>>
>> (iv) The Equipment Rental Payment.
>
> (c) The Equipment Payment, the Supplies Payment, and the Royalty payable pursuant to Section 1.07, collectively, shall be referred to herein as the "Purchase Price." All payments under Section l.06(b) shall be by wire transfer in immediately available funds to and in accordance with the wire instructions provided on behalf of Seller contained on Section 1.06(c) of the Disclosure Schedule.

The purchase price, as delineated above, does not include Page's name.

As to Page's goodwill, the sections of the Agreement to which appellants refer do not demonstrate Southwest purchased Page's goodwill and the purchase price did not include Page's goodwill. There is no language in the contract by which Southwest purchased Page's goodwill.

Because the Agreement is not ambiguous, we construe it as a matter of law. *Milner v. Milner*, 361 S.W.3d 615, 619 (Tex. 2012); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). The express language of the Agreement reflects Southwest did not purchase Page's name or goodwill. Accordingly, as a matter of law, Southwest is not liable as a successor to Page pursuant to section 31.081 of the Tax Code. We therefore overrule appellants' issue and affirm the trial court's judgment.

7

/s/     Margaret "Meg" Poissant
Justice

Panel consists of Chief Justice Frost and Justices Spain and Poissant.