ACCEPTED
03-15-00657-CV
7774560
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/10/2015 5:14:45 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00657-CV

## In the Court of Appeals
## for the Third Judicial District
## at Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/10/2015 5:14:45 PM
JEFFREY D. KYLE
Clerk

CHRIS TRAYLOR, AS EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND
HUMAN SERVICES COMMISSION, et al.
*Appellants*,

v.

DIANA D., AS NEXT FRIEND OF KD, A CHILD, et al.
*Appellees*.

On Appeal from the
200th Judicial District Court of Travis County, Texas

**REPLY SUPPORTING RULE 24.4 MOTION TO VACATE COUNTER-SUPERSEDEAS
ORDER OR, IN THE ALTERNATIVE, INCREASE COUNTER-SUPERSEDEAS BOND**

TO THE HONORABLE THIRD COURT OF APPEALS:

Plaintiffs misunderstand both the Commission's argument and the relevant

administrative rules. The Commission does not argue, as plaintiffs suggest, that

*Armstrong v. Exceptional Child Center, Inc.*, 135 S.Ct. 1378 (2015), somehow preempts

state law as a general matter. Resp. at 13 ¶ 17. The Commission's position is, rather,

that 42 U.S.C. § 1396c, as interpreted in *Armstrong*, preempts state-court *remedies*

that change the amount of Medicaid *rates*. Mtn. at 13-17. Plaintiffs' response ignores

the actual scope of the Commission's argument and, as a result, fails to respond to it.

Although the Commission has drawn its motion narrowly, so as to address only the remedy of a counter-supersedeas order as opposed to the merits of the underlying dispute, plaintiffs have brought that issue into this proceeding. *See* Resp. at 10-11. Plaintiffs misread or ignore the relevant statutes and rules. Substantively, plaintiffs' position is that § 355.8021(a)(2)(B) requires particular reporting requirements, because the rates in this case were adopted in a "periodic rate review," *see id.* (citing 1 TEX. ADMIN. CODE § 355.8021(a)(2)(B)). But § 355.8021(a)(2)(B) does not apply. These rates were changed through a rate "adjustment," not a periodic rate review.[1] TEX. GOV'T CODE § 531.021(e); 1 TEX. ADMIN. CODE § 355.201(d)(1)(A), (D).

The adjustment process occurs "notwithstanding" other legal requirements, including the reporting requirement of § 355.8021(a)(2)(B) for periodic review. *See* TEX. GOV'T CODE § 531.021(e); 1 TEX. ADMIN. CODE § 355.201(d). Nor is there a procedural basis for this lawsuit in *El Paso Hospital District v. Tex. Health & Human*

---

[1] Plaintiffs attempt to capitalize on their confusion between the APA and the ratemaking process to suggest that there was something improper in pulling down the first and second rates. *See* Resp. at 5 ¶¶ 6, 7. But the first two sets of rates (1) relied on commercial rates, which the Commission concedes is improper; and (2) failed to cite § 355.201, or present the rates as an "adjustment." *See* CR.18-39, CR.212-233. The final, October 1 rates correctly invoke the adjustment process and Rider 50. *See* CR.351-373; *see esp.* CR.352 (rules are based on "Rider 50" and "§ 355.201(d)(1)(A) and (D)").

*Services Commission*, 247 S.W.3d 709, 711, 714-15 (Tex. 2008) ("*El Paso Hospital District I*"). As this Court and the Supreme Court both recognized following remand, a § 2001.038 claim cannot be used to change Medicaid rates, only to challenge the underlying rules. *El Paso Cnty. Hosp. Dist. v. Tex. Health & Human Servs. Comm'n*, 400 S.W.3d 72, 81 (Tex. 2013) ("*El Paso Hospital District II*") ("our prior opinion and judgment did not create a remedy for the hospitals' past reimbursement claims"); *see also Tex. Health & Human Servs. Comm'n v. El Paso Cnty. Hosp. Dist.*, 351 S.W.3d 460, 487 (Tex. App.—Austin 2011) *aff'd* 400 S.W.3d 72 (Section 2001.038's scope is limited "solely to the extent of permitting suits against state agencies for declaratory relief concerning the validity or applicability of their rules"). And because the Commissioner's discretion is to set rates, subject to the limitations of the Medicaid Act, there could be no *ultra vires* claim related to the amount of rates, and the discretion granted to proceed "notwithstanding" other legal requirements set out in § 531.021(e) precludes any *ultra vires* act. *See, e.g.*, *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2007).

## ARGUMENT

### I. PLAINTIFFS' RELIANCE ON *POST HOC* INTENT LETTERS SIGNED BY INDIVIDUAL LEGISLATORS IS AN IMPROPER ATTEMPT TO BRING POLITICAL PRESSURE ON THE COURT VIA INCOMPETENT EVIDENCE.

Before engaging with the substance of the counter-supersedeas issue, it is important to deal with the documents that constituted the bulk of plaintiffs' filing:

the *post hoc* letters signed by individual legislators and their impact on the meaning of Rider 50c. Those letters are at odds with the plain text of Rider 50 and are, as a matter of law, incompetent to change the meaning of a statute. They appear to mark an attempt to bring political pressure on this Court to avoid the necessary implications of Rider 50.

### A. The Text of Rider 50 Mandates these Rate Cuts.

Rider 50, the relevant language from which is attached to the Commission's Rule 24 motion, makes clear that the cuts are not optional. 2016-17 General Appropriations Act, 84th Leg., R.S., 2015 (Article II, Health & Human Servs. Comm'n) ("Rider 50") (excerpts attached as appendix). Part 50a makes clear that funding has already been cut from the Medicaid portion of the budget. Rider 50a. ("Included in appropriations above in Goal B, Medicaid, is a reduction of . . . a biennial total of $373,000,000 in General Revenue Funds and $496,570,428 in Federal Funds.") Portions of this larger cut "may" include various initiatives. Rider 50b ("This reduction shall be achieved through the implementation of the plan described under subsection d which may include any or all of the following initiatives:").

Rider 50c is the kicker. After requiring a change in reimbursement methodology to meet industry standards, "while considering stakeholder input and access to care," the Rider makes specific requirements regarding Medicaid therapy rates:

> Out of the amount [already cut] in subsection (a), in each fiscal year at least $50,000,000 in General Revenue Funds savings should be achieved through rate reductions. . . . .

Rider 50(c). In short, plaintiffs' entire reading of the Rider depends on the word "should," which addresses "rate cuts" that are to be used to account for money that was already cut from the budget, according to Rider 50a.[2]

Given that the funds have already been cut from the budget, the word "should" is an instruction to the Commission regarding the proportion of the total cuts that are to be directed to Medicaid therapy rate reductions. The word "should" is not included in the list of words given a background meaning by the Code Construction Act, *see* TEX. GOV'T CODE § 311.016, nor is there a large body of case law governing its use as opposed to the more common statutory terms "shall" and "may," *see Thomas v. Groebl*, 147 Tex. 70, 78-79, 212 S.W.2d 625, 630 (1948) ("shall" can mean "may," and vice versa). "Should" is the past tense of "shall," and, though it is sometimes used to express "probability or expectation," it also serves to indicate "obligation or duty." AMER. HERITAGE DICTIONARY (4th ed. 1994) 1612. Thus, like "shall" and "may," the word "should" can create a mandatory standard in some contexts. *See* A DICTIONARY OF MODERN LEGAL USAGE (2d ed. 1995) ("Oddly, *should*, like *may* . . . is sometimes used to create mandatory

---

[2] The response suggests that the word "may" also applies to the rate cuts. Resp. at 16 ¶ 21. This is wrong. The word "may" applies to the various initiatives in which the Commission is empowered to initiate to cut an additional $25 million in funding. Rider 50(c).

standards, as in the ABA Code of Judicial Conduct"). Texas courts have routinely applied decrees using the word "should" as creating mandatory duties in statutes, orders, and instructions.[3] It makes sense to do so in this context: Rider 50a sets out a total amount of cuts, and Rider 50c sets out instructions for how to achieve at least $100,000,000 of those cuts during the biennium. Given that the word "should" is directed at a portion of the cuts already made, nothing in the context suggests that the cuts themselves, or their amount, is either conditional or conditioned upon any particular data or analysis.

Plaintiffs have implied that the reference to "access to care" impacts the rate changes. *See* Resp. at 16 ¶ 21 (putting "access to care" next to the rate cuts with an ellipsis). This is misleading: Rider 50 ties access to reformation of reimbursement methodology, not to rate cuts. Rider 50(c). The rate cuts are in a separate sentence. And even if the rate cuts were subject to procedural requirement to perform an "access to care" inquiry, the reference to "access to care" necessarily invokes the Medicaid Act's interpretation of the term, because there is no contrary definition in

---

[3] *See City of Austin v. Cannizzo*, 153 Tex. 324, 331, 267 S.W.2d 808, 813 (1954) ("Whatever distinctions may be made between the words will and should by lexicographers and between the phrases 'the price which the property will bring' and 'the price which the property should bring' by grammarians, the ordinary signification of the latter word and phrase would, by contrast at least, be calculated to lead the jury to award a greater sum, including purely speculative elements of damages."); *Ex Parte Mitchell*, 783 S.W.2d 703, 705 (Tex. App.—El Paso 1989, no writ) (support order enforceable even though it says obligor "should" pay); *Cullen Center Bank & Trust Co. v. Tex. Commerce Bank*, 841 S.W.2d 116, 125 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (use of word "should" does not render finding speculative).

Texas law and because Medicaid is a Spending Clause program. 42 U.S.C. § 1396a(30)(A); *see* Motion at 7-8. Thus, the only potential legal question is whether the data supporting the adjustment pass muster under federal law—and that inquiry is in the hands of the Secretary.

**B.     The Post-Enactment Legislator Letters Cannot Change the Meaning of the Legislature's Enactment.**

Plaintiffs appear to believe that the number of legislator signatures they can marshal in support of their lawsuit changes the law. But such letters are of little, or no, value in determining the meaning of a Legislative enactment. *In re Doe*, 19 S.W.3d 346, 352 (Tex.2000) ("[C]ourts construing statutory language should give little weight to post-enactment statements by legislators. Explanations produced, after the fact, by individual legislators are not statutory history, and can provide little guidance as to what the legislature collectively intended.").

"The very notion of post-enactment legislative history is oxymoronic." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 470 n.46 (Tex. 2009). Like all post-enactment legislative history, the Legislator letters are of little use to the courts, because they represent the views of the Legislators, not the Legislature as a body at the time of enactment. *See Ojo v. Farmers Group*, 356 S.W.3d 421, 433 (Tex. 2011) (using Commissioner of Insurance report implemented pursuant to statute as evidence of Legislature's knowledge of report's contents). The letters attached to plaintiffs reply are the type of oxymoronic attempt to sway the outcome of a case on

7

political grounds the Supreme Court has long decried: they "are not statutory history." *Doe*, 19 S.W.3d at 352. They should not sway the Court to take an unrealistic view of the word "should," read—as it must be—in light of the Legislature's choice to cut far more money from the Medicaid budget and dedicate $100 million of that cut to rate cuts—as opposed to other aspects of therapy provision, which are subject to separate cuts of different amounts of money—addressed to home therapy.

## II. THE REMEDY OF SUSPENDING THE OCTOBER 1 RATES IS PREEMPTED BY 42 U.S.C. § 1396C.

Plaintiffs misrepresent the Commission's position as being that *Armstrong* somehow preempts state law. Resp. at 13-14 ¶ 17. In fact, the Commission's position is that 42 U.S.C. § 1396c preempts state-court remedies that change the amount of Medicaid rates.

### A. Plaintiffs Misunderstand the Commission's Preemption Argument.

Plaintiffs fundamentally misunderstand the Commission's preemption argument with regard to the counter-supersedeas order. *See* Resp. at 9-10 ¶ 14 (asserting that State attacks underlying temporary injunction); 13 ¶ 17 ("Appellants argue that *Armstrong* . . . preempts any challenges of any sort"). While the State's arguments also impact the various causes of action plaintiffs have attempted (and failed) to plead, the attack on the counter-supersedeas order is an attack on a specific

remedy that changes the amount of Medicaid rates in derogation of 42 U.S.C. § 1396c. *See* Mtn. at 13-17. Implementing a contrary remedy, including a counter-supersedeas order, is "fundamental error" because it constitutes the exercise of a power denied to the courts by the federal and Texas constitutions, by taking something from the executive and federal, and giving it to the state judiciary. *See* Mtn. at 17-21; *e.g.*, *McCauley v. Consol. Underwriters*, 157 Tex. 421, 477, 304 S.W.2d 265, 266 (1957) (per curiam).[4] It is the remedy of changing the rates that is preempted in this case.

Nor does *Armstrong* preempt anything. The State's position is that *Armstrong*'s construction of 42 U.S.C. § 1396c causes that provision to preempt contrary remedies. This necessarily follows from the conclusion that there is no separate cause of action to change Medicaid rates. Mtn. at 11-15. Plaintiffs mistakenly suggest that Justice Breyer's view of the issue renders the remainder of *Armstrong* non-precedential. Resp. at 14 ¶ 18 (relying on *Planned Parenthood Gulf Coast, Inc. v.*

---

[4] Once again, plaintiffs misunderstand the Commission's position when they suggest that the Commission relies on fundamental error as a procedural vehicle to raise a claim. *See* Resp. at 12-13. It is, of course, unnecessary to do so because Rule 24 provides a vehicle for the Commission's challenge to the underlying order. *McCauley* is significant because it recognizes the substantive significance of actions taken outside of a court's authority to act, which necessarily impact the validity of judicial action, 304 S.W.2d at 265 (appeal void because interlocutory); *see City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). The Supreme Court routinely acts to prevent extra-judicial actions. *E.g.*, *In re Vaishangi, Inc.*, 442 S.W.3d 256, 260-61 (Tex. 2014) (mandamus appropriate to vacate appellate orders based on Rule 11 agreement that did not constitute a final judgment).

*Kliebert*, 2015 U.S. Dist. LEXIS 146988 (M.D. La. Oct 29, 2015) (applying rule from rule from *Marks v. United States*, 430 U.S. 188, 193 (1977) to deem Justice Breyer's concurrence controlling).[5] This is unhelpful, because the district court got the *Marks* rule analysis wrong. Justice Breyer *joined* Part III of *Armstrong*—the only part of the majority opinion he did not join was Part IV—so there is no need to apply the *Marks* rule.[6] The Commission relies on the majority opinion in Part III. *See* Mtn. at 5-7. In light of the Fifth Circuit's similar conclusion regarding access-to-care claims, *Equal Access for El Paso, Inc. v. Hawkins*, 509 F.3d 697, 701 (5th Cir. 2007), it is clear that the relevant remedy when rates are at a particular level is recourse to the federal Secretary of Health and Human Services.

### B. Plaintiffs' Assertion that the Remedy Remains Unpreempted Is Based on a Misunderstanding of the Relevant Texas Law.

Plaintiffs simply misunderstand Texas law when they suggest that there is a separate, statutory right to have courts impose particular Medicaid rates in derogation of the Secretary's arguments. *See* Resp. at 10-11 (asserting that there is a right to bring suit regarding Medicaid rates triggered by a claim regarding the

---

[5] Like State district-court opinions in the Texas system, federal district court decisions are non-precedential in the federal system.

[6] And even under Justice Breyer's view that there is potential for judicial review of the Secretary's actions in federal court under the federal APA, those federal remedies would nonetheless preempt the counter-supersedeas order in this case. As Justice Breyer has emphasized, judicial review under the APA is very different from the exercise of judicial policy making because, significantly, the APA allows the court only to reverse orders, not to issue relief mandating specific policy outcomes. *See Douglas v. Indep. Living Ctr. of S. Calif.*, 132 S. Ct. 1204, 1210 (2012).

relevant administrative rules). As explained above, plaintiffs' argument is foreclosed by *El Paso Hospital District II*. To establish a separate entitlement to relief that is not preempted, plaintiffs would have to show a substantive Texas statutory requirement that imposes an additional requirement regarding the ultimate level of rates, beyond what the Medicaid Acts require.

Plaintiffs are simply wrong when they suggest that the APA impacts Medicaid rates at all. The rate making process is not subject to the APA—by statute it requires only a hearing to consider public input, not the separate range of APA formal rulemaking. *Compare* TEX. GOV'T CODE §§ 2001.023, .024, .029, .030 (notice and comment requirements for rulemaking, including written response requirement), *with* 1 TEX. ADMIN. CODE § 322.501 (containing distinct notice and hearing requirements, with no requirement to respond in writing to comments). There is no provision, as in the APA, for incorporating the public comments. If public comment suggests a need for a change, the proper remedy is to pull down the rates and start the process over.

And plaintiffs are too cute by half when they suggest that federal law is irrelevant because "[n]owhere in the pleadings, briefing, or temporary injunction is there any reference to the federal statutory Medicaid right to access to care." Resp. at 15 ¶ 19. That is exactly the point. Under *Armstrong* there is no such federal right to be enforced in the courts. To recognize an implicit right to do so in Texas courts, by injunction or supersedeas order, is to disrupt the balance of power between the

state and federal governments in the Spending Clause context and, as a result, to violate both constitutions. *See* Mtn. at 13-20.

\* \* \*

The Rule 24 motion presents a remedy preemption issue; the broader preemption issues are presented in the pending appeal. The Secretary's authority to withhold funding is the only remedy related to rate amounts. It is, therefore, preemptive. Plaintiffs point to nothing in Texas law that creates a separate procedural or substantive requirement that impacts the amount of rates: their arguments are all based on inapplicable law and rules. Because plaintiffs rely on their erroneous view of Texas law, rather than engage with the Commission's constitutional arguments, they have provided no basis for their position. The Court should reverse and vacate the counter-supersedeas order.

### III. PLAINTIFFS MISUNDERSTAND THE NATURE OF APPELLATE REVIEW UNDER RULE 24.4 AND THE SCOPE OF ABUSE-OF-DISCRETION REVIEW.

Plaintiffs' view of both counter-supersedeas and the bond requirements for imposing counter-supersedeas are contrary to the text of the rule. Plaintiffs' view is that counter-supersedeas is designed to protect the party avoiding supersession. Resp. at 8-9 ¶ 13 (citing *In re Board for Educator Certification*, 452 S.W.3d 802 (Tex. 2014) for proposition that § 24.2(a)(3) is a substantive limit on the government's ability to obtain supersedeas); Resp. at 23 ¶ 30 (improperly asserting that separate provision governing supersedeas bonds related to money judgments requires

downward adjustment of counter-supersedeas bond to avoid economic harm in case involving injunctive relief). Accordingly, they argue that the evidence showing that *the plaintiffs* would be harmed determines the amount of the bond. Resp. at 23. That position bears no relationship to the text of Rule 24.

**A.  Rule 24.2(a)(3) Requires that the Bond Protect the Judgment Creditor (in this Case the State) from the Change in the Status Quo During the Appeal.**

In fact, Rule 24.2(a)(3) provides:

When the judgment is for something other than money or an interest in property, the trial court must set the amount and type of security that the judgment debtor must post. The security must adequately protect the judgment creditor against loss or damage that the appeal might cause. But the trial court may decline to permit the judgment to be superseded if the judgment creditor posts security ordered by the trial *court in an amount and type that will secure the judgment debtor against any loss or damage caused by the relief granted the judgment creditor if an appellate court determines, on final disposition, that that relief was improper.*

TEX. R. APP. P. 24.2(a)(3) (emphasis added). The plain text requires the bond to be set in an amount that will protect *the State* from the potential that it will not be able to implement Rider 50c's cuts until after the end of the biennium: the bond must protect the judgment debtor through resolution of litigation. Thus, the operative question is whether the Commission (and by extension the State of Texas) will be protected during the appeal from any ill effects of the status quo being changed before the appeal is final. *See* Mtn. at 21-24.

13

Because plaintiffs have proffered only evidence of potential harm to themselves, there has never been any probative evidence regarding the amount necessary to protect the State of Texas. They are simply wrong to suggest that the counter-supersedeas bond should be set at a level that protects the judgment creditor—quite the opposite.

**B.** **Plaintiffs Attempt to Obscure the Scope of the District Court's Injunction in an Attempt to Minimize the Importance of the Bond.**

Rule 24 provides that the court of appeals will not be prevented from changing the amount of the bond based on changed circumstances, merely because the issue has not been presented to the district court a second time. TEX. R. APP. P. 24.4(b). There has been a change: in response to the State's motion to modify the injunction, the district court declined to provide a more specific ruling, and instead stated that the scope of the injunction would be made clear in subsequent sanctions proceedings. Supp. RR.36:17-38:10. This is, plainly, a violation of Rule 683 and a basis for vacating the temporary injunction in the underlying appeal. TEX. R. CIV. P. 683; *Tex. Health & Human Servs. Comm'n v. Advocates for Patient Access, Inc.*, 399 S.W.3d 615, 628-29 (Tex. App.—Austin 2013, no pet.). But, apart from that, the district court's confirmation of the breadth, and uncertainty, of its order impacts the potential harm to the State during appeal and, as a result, the appropriate bond to be filed.

Plaintiffs attempt stridently to direct the Court's attention away from the district court's views on the scope of its injunction. *See* Resp. at 3 n.1 (asking the

Court to pretend the hearing did not happen and is not in the record). But the statements are already in the record, and they are relevant by operation of Rule 24.4(b). The district court's statements, without doubt, vitiate plaintiffs' argument that the counter-supersedeas should be subject to a minimal bond because it only imposes an obligation not to violate the law. *See* Resp. at 23-24 ¶ 31. The Commission, and Rider 50, are held hostage by the district court's order, in the absence of a constitutional violation, and without any meaningful guidelines as to how to proceed. $500 is not a sufficient bond to protect the State of Texas from potentially losing the entirety of the $100,000,000 the Legislature already cut from the budget, if this case is not resolved and the mandate issued within the next 22 months. In short, the bond is not related to the factors that the rule says the bond should be based upon. That is a classic abuse of discretion. *See* Mtn. at 21-24.

Nor is it an answer to argue, as plaintiffs do, Resp. at 23 ¶ 30, that the cuts can be made up later in the biennium. Quite the contrary: to achieve the total amount of cuts, the Commission would have to cut all providers' rates *even more* to make up the difference within the two year deadline for saving the $100 million. *See* Mtn. at 24.

### C. There Is No Preservation Issue, Because this is a Challenge to the Initial Imposition of Counter-Supersedeas.

Plaintiffs argue waiver. *See* Resp. at 19-20. But the preemption argument is not subject to waiver because it is jurisdictional and presents fundamental error, and the bond amount issue is not subject to waiver because of the district court's statement

15

on the record regarding the scope of the injunction or, in the alternative, could not be waived by an Assistant Attorney General.

Preempted acts are outside the courts' powers. Actions outside of jurisdiction are subject to attack on appeal without regard to preservation. *E.g.*, *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 94 (Tex. 2012); *see also McCauley*, 157 Tex. at 477, 304 S.W.2d at 266. The counter-supersedeas remedy is at odds with the exclusive remedy overseen by the federal Secretary of Health and Human Services. Because it was outside the judicial power entirely, it can be challenged through any appropriate mechanism—including Rule 24.4.

Plaintiffs further argue that the amount of bond cannot be challenged because there was no separate motion to change the bond in the district court and because the assistant attorney general said that the bond was reasonable. Resp. at 21-22 ¶ 28. Neither claim is dispositive, because the district court's statements at the motion to modify have crystallized the lower court's view of the injunction and plainly imposes two illegal requirements: (1) that § 355.8021(a)(2)(B) be applied to rate *adjustments*, as opposed to periodic rate *reviews*, *see supra*, introduction, and (2) that the Commission find out whether its actions violate the injunction in future sanctions proceedings, *see supra*, Part III.B. That broad view of the scope of injunctive relief expands the scope of the injunctive relief and the potential harm to the State of Texas. And, as explained above, harm to the State is the only relevant question in setting the counter-supersedeas bond. Tex. R. App. P. 24.2(a)(3); *see supra*, Part

III.A. Plaintiffs have never proffered an explanation of how $500 protects the State's interests during appeal: they merely suggest that the State's interests are somehow less than their own. There is no balancing test.

Even absent the statements at the modification hearing, there would be no waiver, because an assistant attorney general cannot waive the State's substantive interests. TEX. GOV'T CODE § 402.004; *see Employees Retirement Sys. v. Bass*, 840 S.W.2d 710, 714 (Tex. App.—Eastland 1992, no writ) ("An admission of the attorney general cannot prejudice the rights of the State."). This injunction imposes a limitation on Legislative policy, based on a nominal bond. Even had the assistant attorney general in question been authorized to make this admission, it would violate § 402.004 to allow this admission to stand, because it would allow the attorney general to make policy, through the courts, in derogation of statutory language. *See Tex. Health Care Information Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841,848 (Tex. App.—Austin 2002, pet. denied) (citing *State v. Keeton Packing Co.*, 487 S.W.3d 775, 780 (Tex. Civ. App.—Amarillo 1972, writ ref'd n.r.e.)). Allowing this waiver to preclude a subsequent challenge to the amount of the bond would allow the Attorney General, by an affirmative statement, to bind the hands of both the Commission and the Legislature regarding implementation of the budget.

\* \* \*

The relevant question regarding the bond is whether it will protect the party seeking supersedeas from damages resulting from changing the *status quo*. There is

17

no evidence explaining how the bond does this, so its issuance has always been an abuse of discretion. The scope of the injunction is, at least arguably, broader following the modification hearing. It is certainly less clear. Thus, even though the assistant attorney general referred to the bond as "reasonable" in terms of plaintiffs' evidence regarding harm to themselves, there is no evidence supporting the bond under the relevant legal inquiry, which is the potential for damage to the State during the pendency of the appeal. Because the only legally relevant inquiry is whether the bond protects the State's interests, the bond amount must be increased to cover the entire potential loss to the State if this litigation continues through the appellate process for two or more years.

## PRAYER

The Court should vacate the counter-supersedeas order or, in the alternative, order the bond amount necessary to comply with Rule 24's requirement that the party who is denied supersedeas be made entirely whole for any harm caused by changing the *status quo*—$100,000,000 to cover both the amount of general revenue Rider 50(c) was intended to remove from the Medicaid program and the cost of hiring 50 new employees to comply with the injunction's requirements.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

SCOTT A. KELLER
Solicitor General

 /s/ Kristofer Monson
KRISTOFER S. MONSON
Assistant Solicitor General
State Bar No. 24037129

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697
*kristofer.monson@texasattorneygeneral.gov*

COUNSEL FOR APPELLANTS

# CERTIFICATE OF SERVICE

On November 10, 2015 this document was served via File&Serve Xpress on:

| | |
|---|---|
| Ben Hathaway | Kristofer S. Monson |
| Dan Richards | Office of the Attorney General |
| Richards Rodriguez & Skeith | P.O. Box 12548 (MC 059) |
| 816 Congress Avenue | Austin, Texas 78701 |
| Suite 1200 | *kristofer.monson@texasattorneygeneral.gov* |
| *drichards@rrsfirm.com* | |
| *bhathaway@rrsfirm.com* | |

COUNSEL FOR APPELLEES          COUNSEL FOR APPELLANT

 /s/ Kristofer S. Monson

# APPENDIX

# CONFERENCE COMMITTEE REPORT

**3RD Printing**

# H.B. NO. 1
# GENERAL APPROPRIATIONS
# BILL

# TABLE OF CONTENTS

**RECAPITULATION - ALL ARTICLES**................................................................................ix

## ARTICLE I - GENERAL GOVERNMENT

Arts, Commission on the..........................................................................................................I-1
Attorney General, Office of the .............................................................................................I-3
Bond Review Board.................................................................................................................I-12
Cancer Prevention and Research Institute of Texas...............................................................I-13
Comptroller of Public Accounts ............................................................................................I-16
Fiscal Programs - Comptroller of Public Accounts ..............................................................I-22
    Informational Listing of Funds Appropriated to the Comptroller for Social Security BRP.......I-27
Emergency Communications, Commission on State...............................................................I-28
Emergency Services Retirement System, Texas.....................................................................I-31
Employees Retirement System ...............................................................................................I-32
Ethics Commission, Texas......................................................................................................I-36
Facilities Commission.............................................................................................................I-38
Finance Authority, Public .......................................................................................................I-46
Governor, Office of the...........................................................................................................I-51
Trusteed Programs within the Office of the Governor...........................................................I-52
Historical Commission............................................................................................................I-61
Information Resources, Department of....................................................................................I-66
Library & Archives Commission............................................................................................I-72
Pension Review Board.............................................................................................................I-76
Preservation Board..................................................................................................................I-77
Risk Management, State Office of ..........................................................................................I-80
Secretary of State ....................................................................................................................I-82
Veterans Commission .............................................................................................................I-85
Retirement and Group Insurance ............................................................................................I-89
Social Security and Benefit Replacement Pay........................................................................I-90
Bond Debt Service Payments..................................................................................................I-90
Lease Payments.......................................................................................................................I-91
Recapitulation - Article I - General Revenue.........................................................................I-92
Recapitulation - Article I - General Revenue - Dedicated .....................................................I-93
Recapitulation - Article I - Federal Funds .............................................................................I-94
Recapitulation - Article I - Other Funds ................................................................................I-95
Recapitulation - Article I - All Funds ....................................................................................I-96

## ARTICLE II - HEALTH AND HUMAN SERVICES

Aging and Disability Services, Department of ........................................................................II-1
Assistive and Rehabilitative Services, Department of ............................................................II-18
Family and Protective Services, Department of......................................................................II-30
State Health Services, Department of .....................................................................................II-47
Health and Human Services Commission................................................................................II-76
Retirement and Group Insurance ............................................................................................II-107
Social Security and Benefit Replacement Pay........................................................................II-108
Bond Debt Service Payments..................................................................................................II-108
Lease Payments.......................................................................................................................II-109
Special Provisions Relating to All Health and Human Services Agencies.............................II-109
Recapitulation - Article II - General Revenue .......................................................................II-135
Recapitulation - Article II - General Revenue - Dedicated....................................................II-136
Recapitulation - Article II - Federal Funds ............................................................................II-137
Recapitulation - Article II - Other Funds...............................................................................II-138
Recapitulation - Article II - All Funds...................................................................................II-139

## ARTICLE III - EDUCATION

Education Agency, Texas ........................................................................................................III-1
Blind and Visually Impaired, School for the .........................................................................III-21
Deaf, School for the................................................................................................................III-25
Special Provisions for the School for the Blind and Visually Impaired /
School for the Deaf.................................................................................................................III-27
Teacher Retirement System ....................................................................................................III-28
Optional Retirement Program .................................................................................................III-33
Group Insurance Contributions, Higher Education Employees...............................................III-34
Higher Education Coordinating Board ....................................................................................III-39
Higher Education Fund............................................................................................................III-56
The University of Texas System Administration.....................................................................III-56
Available University Fund.......................................................................................................III-58

Available National Research University Fund ............................................................................III-61
Permanent Fund Supporting Military and Veterans Exemptions ...............................................III-62
The University of Texas at Arlington .........................................................................................III-62
The University of Texas at Austin ..............................................................................................III-65
The University of Texas at Dallas ..............................................................................................III-69
The University of Texas at El Paso .............................................................................................III-71
The University of Texas at Rio Grande Valley ...........................................................................III-74
The University of Texas of the Permian Basin ...........................................................................III-78
The University of Texas at San Antonio .....................................................................................III-80
The University of Texas at Tyler ................................................................................................III-83
Texas A&M University System Administrative and General Offices .........................................III-85
Texas A&M University .................................................................................................................III-86
Texas A&M University at Galveston ...........................................................................................III-88
Prairie View A&M University .....................................................................................................III-90
Tarleton State University .............................................................................................................III-93
Texas A&M University - Central Texas ......................................................................................III-95
Texas A&M University - Corpus Christi .....................................................................................III-97
Texas A&M University - Kingsville ..........................................................................................III-100
Texas A&M University – San Antonio ......................................................................................III-102
Texas A&M International University .........................................................................................III-104
West Texas A&M University .....................................................................................................III-106
Texas A&M University - Commerce ..........................................................................................III-109
Texas A&M University - Texarkana ..........................................................................................III-111
University of Houston System Administration ..........................................................................III-113
University of Houston ................................................................................................................III-115
University of Houston - Clear Lake ...........................................................................................III-117
University of Houston - Downtown ...........................................................................................III-119
University of Houston - Victoria ...............................................................................................III-121
Midwestern State University .....................................................................................................III-122
University of North Texas System Administration ....................................................................III-125
University of North Texas ..........................................................................................................III-126
University of North Texas at Dallas ..........................................................................................III-128
Stephen F. Austin State University ............................................................................................III-130
Texas Southern University .........................................................................................................III-132
Texas Tech University System Administration ..........................................................................III-135
Texas Tech University ...............................................................................................................III-136
Angelo State University .............................................................................................................III-138
Texas Woman's University ........................................................................................................III-140
Texas State University System ..................................................................................................III-143
Lamar University .......................................................................................................................III-144
Lamar Institute of Technology ..................................................................................................III-146
Lamar State College - Orange ...................................................................................................III-148
Lamar State College - Port Arthur ............................................................................................III-150
Sam Houston State University ...................................................................................................III-151
Texas State University ...............................................................................................................III-154
Sul Ross State University ...........................................................................................................III-156
Sul Ross State University Rio Grande College ..........................................................................III-158
The University of Texas Southwestern Medical Center .............................................................III-160
The University of Texas Medical Branch at Galveston .............................................................III-163
The University of Texas Health Science Center at Houston .......................................................III-167
The University of Texas Health Science Center at San Antonio ................................................III-171
The University of Texas M. D. Anderson Cancer Center ...........................................................III-175
The University of Texas Health Center at Tyler ........................................................................III-179
Texas A&M University System Health Science Center .............................................................III-182
University of North Texas Health Science Center at Fort Worth ...............................................III-187
Texas Tech University Health Sciences Center ..........................................................................III-191
Texas Tech University Health Sciences Center at El Paso .........................................................III-194
Public Community/Junior Colleges ...........................................................................................III-198
Texas State Technical College System Administration ..............................................................III-207
Texas State Technical College - Harlingen ...............................................................................III-210
Texas State Technical College - West Texas .............................................................................III-211
Texas State Technical College - Marshall .................................................................................III-213
Texas State Technical College - Waco ......................................................................................III-214
Special Provisions Relating Only to Components of Texas State Technical College .................III-216
Texas A&M Agrilife Research ...................................................................................................III-218
Texas A&M Agrilife Extension Service ....................................................................................III-221
Texas A&M Engineering Experiment Station ............................................................................III-224
Texas A&M Transportation Institute .........................................................................................III-226
Texas A&M Engineering Extension Service ..............................................................................III-229
Texas A&M Forest Service ........................................................................................................III-231
Texas A&M Veterinary Medical Diagnostic Laboratory ..........................................................III-234

# TABLE OF CONTENTS
## (Continued)

Retirement and Group Insurance ..........................................................................................III-236
Social Security and Benefit Replacement Pay.......................................................................III-237
Bond Debt Service Payments.................................................................................................III-237
Lease Payments......................................................................................................................III-238
Special Provisions Relating Only to State Agencies of Higher Education ............................III-238
Recapitulation - Article III - General Revenue .....................................................................III-262
Recapitulation - Article III - General Revenue - Dedicated .................................................III-264
Recapitulation - Article III - Federal Funds..........................................................................III-266
Recapitulation - Article III - Other Funds.............................................................................III-267
Recapitulation - Article III - All Funds.................................................................................III-268

## ARTICLE IV - THE JUDICIARY

Supreme Court of Texas ............................................................................................................ IV-1
Court of Criminal Appeals......................................................................................................... IV-3
First Court of Appeals District, Houston .................................................................................. IV-6
Second Court of Appeals District, Fort Worth .......................................................................... IV-8
Third Court of Appeals District, Austin..................................................................................... IV-9
Fourth Court of Appeals District, San Antonio ....................................................................... IV-10
Fifth Court of Appeals District, Dallas .................................................................................... IV-11
Sixth Court of Appeals District, Texarkana ............................................................................. IV-12
Seventh Court of Appeals District, Amarillo............................................................................ IV-13
Eighth Court of Appeals District, El Paso ............................................................................... IV-14
Ninth Court of Appeals District, Beaumont............................................................................. IV-16
Tenth Court of Appeals District, Waco .................................................................................... IV-17
Eleventh Court of Appeals District, Eastland .......................................................................... IV-18
Twelfth Court of Appeals District, Tyler.................................................................................. IV-19
Thirteenth Court of Appeals District, Corpus Christi - Edinburg............................................ IV-20
Fourteenth Court of Appeals District, Houston ....................................................................... IV-21
Office of Court Administration, Texas Judicial Council .......................................................... IV-22
Office of Capital Writs.............................................................................................................. IV-28
State Prosecuting Attorney, Office of the ................................................................................ IV-29
State Law Library ..................................................................................................................... IV-30
Commission on Judicial Conduct, State ................................................................................... IV-32
Judiciary Section, Comptroller's Department........................................................................... IV-33
Retirement and Group Insurance .............................................................................................. IV-37
Social Security and Benefit Replacement Pay.......................................................................... IV-38
Lease Payments......................................................................................................................... IV-38
Special Provisions - Judiciary................................................................................................... IV-39
Recapitulation - Article IV - General Revenue........................................................................ IV-40
Recapitulation - Article IV - General Revenue - Dedicated .................................................... IV-41
Recapitulation - Article IV - Federal Funds............................................................................. IV-42
Recapitulation - Article IV - Other Funds ............................................................................... IV-43
Recapitulation - Article IV - All Funds ................................................................................... IV-44

## ARTICLE V - PUBLIC SAFETY AND CRIMINAL JUSTICE

Alcoholic Beverage Commission................................................................................................ V-1
Criminal Justice, Department of ................................................................................................. V-4
Fire Protection, Commission on................................................................................................ V-21
Jail Standards, Commission on ................................................................................................. V-23
Juvenile Justice Department....................................................................................................... V-24
Law Enforcement, Commission on............................................................................................ V-36
Military Department................................................................................................................... V-39
Public Safety, Department of ..................................................................................................... V-44
Retirement and Group Insurance ............................................................................................... V-60
Social Security and Benefit Replacement Pay........................................................................... V-60
Bond Debt Service Payments..................................................................................................... V-61
Lease Payments.......................................................................................................................... V-61
Special Provisions Relating to Public Safety and Criminal Justice Agencies .......................... V-61
Recapitulation - Article V - General Revenue........................................................................... V-62
Recapitulation - Article V - General Revenue - Dedicated........................................................ V-63
Recapitulation - Article V - Federal Funds................................................................................ V-64
Recapitulation - Article V - Other Funds................................................................................... V-65
Recapitulation - Article V - All Funds....................................................................................... V-66

## ARTICLE VI - NATURAL RESOURCES

Agriculture, Department of ........................................................................................................ VI-1
Animal Health Commission...................................................................................................... VI-10
Commission on Environmental Quality.................................................................................... VI-13

# TABLE OF CONTENTS

(Continued)

General Land Office and Veterans' Land Board ................................................................................ VI-24
Low-Level Radioactive Waste Disposal Compact Commission ...................................................... VI-30
Parks and Wildlife Department......................................................................................................... VI-32
Railroad Commission......................................................................................................................... VI-45
Soil and Water Conservation Board.................................................................................................. VI-50
Water Development Board ................................................................................................................ VI-53
Retirement and Group Insurance ..................................................................................................... VI-61
Social Security and Benefit Replacement Pay.................................................................................. VI-62
Bond Debt Service Payments............................................................................................................ VI-62
Lease Payments.................................................................................................................................. VI-62
Recapitulation - Article VI - General Revenue................................................................................. VI-64
Recapitulation - Article VI - General Revenue - Dedicated ............................................................ VI-65
Recapitulation - Article VI - Federal Funds..................................................................................... VI-66
Recapitulation - Article VI - Other Funds ....................................................................................... VI-67
Recapitulation - Article VI - All Funds ............................................................................................ VI-68

## ARTICLE VII - BUSINESS AND ECONOMIC DEVELOPMENT

Housing and Community Affairs, Department of.............................................................................. VII-1
Lottery Commission, Texas............................................................................................................... VII-7
Motor Vehicles, Department of ........................................................................................................ VII-11
Transportation, Department of.......................................................................................................... VII-14
Workforce Commission, Texas.......................................................................................................... VII-31
    Reimbursements to the Unemployment Compensation Benefit Account............................. VII-45
Retirement and Group Insurance ..................................................................................................... VII-46
Social Security and Benefit Replacement Pay.................................................................................. VII-47
Bond Debt Service Payments............................................................................................................ VII-47
Lease Payments.................................................................................................................................. VII-47
Recapitulation - Article VII - General Revenue ............................................................................... VII-49
Recapitulation - Article VII - General Revenue - Dedicated........................................................... VII-50
Recapitulation - Article VII - Federal Funds ................................................................................... VII-51
Recapitulation - Article VII - Other Funds ...................................................................................... VII-52
Recapitulation - Article VII - All Funds ........................................................................................... VII-53

## ARTICLE VIII - REGULATORY

Administrative Hearings, State Office of........................................................................................... VIII-1
Chiropractic Examiners, Board of .................................................................................................... VIII-5
Dental Examiners, Texas State Board of .......................................................................................... VIII-7
Funeral Service Commission ............................................................................................................ VIII-9
Geoscientists, Board of Professional ................................................................................................ VIII-11
Health Professions Council................................................................................................................ VIII-13
Injured Employee Counsel, Office of ............................................................................................... VIII-14
Insurance, Department of................................................................................................................... VIII-16
Insurance Counsel, Office of Public ................................................................................................. VIII-24
Land Surveying, Board of Professional ............................................................................................ VIII-26
Licensing and Regulation, Department of ........................................................................................ VIII-27
Texas Medical Board ......................................................................................................................... VIII-32
Nursing, Texas Board of.................................................................................................................... VIII-36
Optometry Board ............................................................................................................................... VIII-39
Pharmacy, Board of ........................................................................................................................... VIII-40
Physical Therapy & Occupational Therapy Examiners, Executive Council of ............................. VIII-43
Plumbing Examiners, Board of......................................................................................................... VIII-45
Podiatric Medical Examiners, Board of............................................................................................ VIII-46
Psychologists, Board of Examiners of .............................................................................................. VIII-48
Racing Commission............................................................................................................................ VIII-49
Securities Board................................................................................................................................. VIII-53
Utility Commission of Texas, Public................................................................................................ VIII-55
Utility Counsel, Office of Public ...................................................................................................... VIII-59
Veterinary Medical Examiners, Board of ......................................................................................... VIII-60
Retirement and Group Insurance ..................................................................................................... VIII-62
Social Security and Benefit Replacement Pay.................................................................................. VIII-63
Lease Payments.................................................................................................................................. VIII-63
Special Provisions Relating to All Regulatory Agencies.................................................................. VIII-63
Recapitulation - Article VIII - General Revenue.............................................................................. VIII-67
Recapitulation - Article VIII - General Revenue - Dedicated.......................................................... VIII-68
Recapitulation - Article VIII - Federal Funds.................................................................................. VIII-69
Recapitulation - Article VIII - Other Funds..................................................................................... VIII-70
Recapitulation - Article VIII - All Funds.......................................................................................... VIII-71

# TABLE OF CONTENTS
## (Continued)

## ARTICLE IX - GENERAL PROVISIONS

GENERAL PROVISIONS LEGISLATIVE INTENT ...................................................................... IX-1
    Sec. 1.01. Limitations ............................................................................................................ IX-1

PROVISIONS RELATING TO THE POSITION CLASSIFICATION PLAN ............................. IX-1
    Sec. 2.01. Position Classification Plan.................................................................................. IX-1
        Classified Positions for the 2016-17 Biennium......................................................... IX-1
        Schedule A Classification Salary Schedule ........................................................... IX-17
        Schedule B Classification Salary Schedule............................................................ IX-17
        Schedule C Classification Salary Schedule............................................................ IX-18

SALARY ADMINISTRATION AND OTHER EMPLOYMENT PROVISIONS ........................ IX-18
    Sec. 3.01. Salary Rates......................................................................................................... IX-18
    Sec. 3.02. Salary Supplementation ...................................................................................... IX-19
    Sec. 3.03. Salary Limits ....................................................................................................... IX-19
    Sec. 3.04. Scheduled Exempt Positions. .............................................................................. IX-19
    Sec. 3.05. Evening, Night, Weekend Shift Pay: Registered Nurses and Licensed
           Vocational Nurses ................................................................................................. IX-21
    Sec. 3.06. Recruitment and Retention Bonuses ................................................................... IX-21
    Sec. 3.07. Equity Adjustments............................................................................................. IX-21
    Sec. 3.08. Classification Study on Scheduled Exempt Positions........................................... IX-22
    Sec. 3.09. Method of Salary Payments ................................................................................ IX-22
    Sec. 3.10. Exception - Contracts Less than 12 Months........................................................ IX-22
    Sec. 3.11. Exceptions for Certain Employees....................................................................... IX-22
    Sec. 3.12. Exceptions for Salary Schedule C ....................................................................... IX-22
    Sec. 3.13. Matching Retirement and Certain Insurance........................................................ IX-22

GRANT-MAKING PROVISIONS.............................................................................................. IX-23
    Sec. 4.01. Grant Restriction ................................................................................................. IX-23
    Sec. 4.02. Grants .................................................................................................................. IX-23
    Sec. 4.03. Grants for Political Polling Prohibited ................................................................. IX-23
    Sec. 4.04. Limitation on Grants to Units of Local Government ............................................ IX-23

TRAVEL REGULATIONS.......................................................................................................... IX-24
    Sec. 5.01. Travel Definitions. ............................................................................................... IX-24
    Sec. 5.02. General Travel Provisions.................................................................................... IX-24
    Sec. 5.03. Transportation Expenses ..................................................................................... IX-24
    Sec. 5.04. Transportation in Personally Owned or Leased Aircraft...................................... IX-24
    Sec. 5.05. Travel Meals and Lodging Expenses ................................................................... IX-24
    Sec. 5.06. Special Provisions Regarding Travel Expenses .................................................... IX-25
    Sec. 5.07. Travel and Per Diem of Board or Commission Members.................................... IX-25
    Sec. 5.08. Travel of Advisory Committee Members ............................................................ IX-25

GENERAL LIMITATIONS ON EXPENDITURES...................................................................... IX-26
    Sec. 6.01. Unexpended Balance........................................................................................... IX-26
    Sec. 6.02. Interpretation of Estimates ................................................................................. IX-26
    Sec. 6.03. Excess Obligations Prohibited ............................................................................ IX-26
    Sec. 6.04. Interpretation of Legislative Intent...................................................................... IX-26
    Sec. 6.05. Comptroller's Duty to Pay .................................................................................. IX-27
    Sec. 6.06. Last Quarter Expenditures................................................................................... IX-27
    Sec. 6.07. Employee Benefit and Debt Service Items .......................................................... IX-27
    Sec. 6.08. Benefits Paid Proportional by Fund ..................................................................... IX-27
    Sec. 6.09. Appropriations from Special Funds ..................................................................... IX-28
    Sec. 6.10. Limitation on State Employment Levels............................................................. IX-28
    Sec. 6.11. Purchases of Postage .......................................................................................... IX-31
    Sec. 6.12. Expenditures for State-Federal Relations............................................................ IX-31
    Sec. 6.13. Performance Rewards and Penalties .................................................................... IX-31
    Sec. 6.14. Bookkeeping Entries ........................................................................................... IX-32
    Sec. 6.15. Accounting for State Expenditures ...................................................................... IX-32
    Sec. 6.16. Fee Increase Notification .................................................................................... IX-32
    Sec. 6.17. Consolidated Funds............................................................................................. IX-32
    Sec. 6.18. Demographic and Statistical Studies.................................................................... IX-32
    Sec. 6.19. Cost Allocations.................................................................................................. IX-33
    Sec. 6.20. Use of Appropriations to Contract for Audits...................................................... IX-33
    Sec. 6.21. Limitations on Use of Appropriated Funds.......................................................... IX-33
    Sec. 6.22. Informational Items............................................................................................. IX-33
    Sec. 6.23. Appropriations from State Tax Revenue............................................................... IX-33
    Sec. 6.24. Deposit and Notification Requirement for Certain RESTORE Act Funds ............ IX-33

# TABLE OF CONTENTS
## (Continued)

REPORTING REQUIREMENTS ................................................................................................ IX-34
    Sec. 7.01. Budgeting and Reporting ............................................................................ IX-34
    Sec. 7.02. Annual Reports and Inventories................................................................. IX-35
    Sec. 7.03. Notification to Members of the Legislature............................................... IX-35
    Sec. 7.04. Contract Notification: Amounts Greater than $50,000 ............................. IX-35
    Sec. 7.05. Reports and References............................................................................... IX-35
    Sec. 7.06. Internal Assessments on Utilization of Historically Underutilized
          Businesses .................................................................................................. IX-36
    Sec. 7.07. Historically Underutilized Business Policy Compliance ........................... IX-36
    Sec. 7.08. Reporting of Historically Underutilized Business (HUB) Key Measures ............. IX-36
    Sec. 7.09. Fraud Reporting ......................................................................................... IX-37
    Sec. 7.10. Reporting Requirement for Deepwater Horizon Oil Spill Funds........................ IX-37
    Sec. 7.11. Border Security .......................................................................................... IX-37
    Sec. 7.12. Notification of Certain Purchases or Contract Awards, Amendments,
          and Extensions ........................................................................................... IX-38
    Sec. 7.13. Notification of Certain Expenditures Related to Mitigation of
          Adverse Environmental Impacts ................................................................. IX-40

OTHER APPROPRIATION AUTHORITY ............................................................................... IX-40
    Sec. 8.01. Acceptance of Gifts of Money .................................................................. IX-40
    Sec. 8.02. Reimbursements and Payments................................................................. IX-40
    Sec. 8.03. Surplus Property.......................................................................................... IX-41
    Sec. 8.04. Refunds of Deposits .................................................................................. IX-42
    Sec. 8.05. Vending Machines ...................................................................................... IX-42
    Sec. 8.06. Pay Station Telephones .............................................................................. IX-42
    Sec. 8.07. Appropriation of Collections for Seminars and Conferences .................... IX-42
    Sec. 8.08. Appropriation of Bond Proceeds................................................................. IX-43
    Sec. 8.09. CMIA Interest Payments............................................................................ IX-43
    Sec. 8.10. Appropriation of Receipts: Credit, Charge, Debit Card, or Electronic
          Cost Recovery Service Fees........................................................................ IX-43
    Sec. 8.11. Employee Meal Authorization ................................................................... IX-43
    Sec. 8.12. Bank Fees and Charges .............................................................................. IX-43
    Sec. 8.13. Appropriation of Specialty License Plate Receipts................................... IX-43
    Sec. 8.14. Cost Recovery of Testing Fees.................................................................... IX-43
    Sec. 8.15. Cost Recovery of Fees ............................................................................... IX-44

INFORMATION RESOURCES PROVISIONS .......................................................................... IX-44
    Sec. 9.01. Purchases of Information Resources Technologies..................................... IX-44
    Sec. 9.02. Quality Assurance Review of Major Information Resources Projects................... IX-44
    Sec. 9.03. Biennial Operating Plan and Information Resources Strategic Plan
          Approval..................................................................................................... IX-45
    Sec. 9.04. Information Technology Replacement......................................................... IX-45
    Sec. 9.05. Texas.gov Project: Occupational Licenses................................................. IX-46
    Sec. 9.06. Texas.gov Project: Cost Recovery Fees..................................................... IX-46
    Sec. 9.07. Payments to the Department of Information Resources............................... IX-46
    Sec. 9.08. Computer Inventory Report ....................................................................... IX-47
    Sec. 9.09. Server Consolidation Status Update........................................................... IX-47
    Sec. 9.10. Prioritization of Cybersecurity and Legacy System Projects.................... IX-48
    Sec. 9.11. Cybersecurity Initiatives ............................................................................ IX-48
    Sec. 9.12. Surplus Information Technology Hardware................................................. IX-49

HEALTH-RELATED PROVISIONS.......................................................................................... IX-49
    Sec. 10.01.    Full Application for Health Coverage ................................................. IX-49
    Sec. 10.02.    Appropriation of Disproportionate Share Hospital Payments to
          State - Owned Hospitals...................................................................... IX-49
    Sec. 10.03.    Informational Listing on Use of Tobacco Settlement Receipts .......... IX-49
    Sec. 10.04.    Statewide Behavioral Health Strategic Plan and Coordinated
          Expenditures........................................................................................ IX-51
    Sec. 10.05.    Funding for Autism Services .............................................................. IX-53

PROVISIONS RELATED TO REAL PROPERTY....................................................................... IX-54
    Sec. 11.01.    Limitation on Use of Funds for Personal Residences ......................... IX-54
    Sec. 11.02.    Reporting Related to State Owned Housing ....................................... IX-54
    Sec. 11.03.    Statewide Capital Planning ................................................................ IX-54
    Sec. 11.04.    Efficient Use of State Owned and Leased Space ............................... IX-55
    Sec. 11.05.    State Agency Emergency Leases ........................................................ IX-55
    Sec. 11.06.    Prepayment of Annual Lease Costs..................................................... IX-56
    Sec. 11.07.    Efficient Use of State Property to House State Facilities.................... IX-56

# TABLE OF CONTENTS
## (Continued)

PROVISIONS RELATED TO PROPERTY ....................................................................... IX-56
    Sec. 12.01.   Aircraft .................................................................................................. IX-56
    Sec. 12.02.   Publication or Sale of Printed, Recorded, or Electronically Produced
                Matter or Records.................................................................................. IX-57
    Sec. 12.03.   Limitation on Expenditures for Purchases and Conversions of
                Alternative Fuel Vehicles...................................................................... IX-57
    Sec. 12.04.   Transfer of Master Lease Purchase Program Payments ................................... IX-57

FEDERAL FUNDS ...................................................................................................... IX-58
    Sec. 13.01.   Federal Funds/Block Grants.................................................................. IX-58
    Sec. 13.02.   Report of Additional Funding ............................................................... IX-58
    Sec. 13.03.   Report of Expanded Operational Capacity.............................................. IX-58
    Sec. 13.04.   Reports to Comptroller.......................................................................... IX-58
    Sec. 13.05.   Deposit and Expenditure Limitations..................................................... IX-58
    Sec. 13.06.   Reimbursements from Federal Funds...................................................... IX-59
    Sec. 13.07.   Limitations on Positions........................................................................ IX-59
    Sec. 13.08.   Funding Reductions............................................................................... IX-59
    Sec. 13.09.   Unexpended Balances ........................................................................... IX-59
    Sec. 13.10.   Temporary Assistance for Needy Families (TANF)
                or Social Services Block Grant (SSBG)................................................. IX-59
    Sec. 13.11.   Definition, Appropriation, Reporting and Audit of
                Earned Federal Funds............................................................................ IX-60
    Sec. 13.12.   Reporting of Federal Homeland Security Funding ................................. IX-62

AGENCY DISCRETIONARY TRANSFER PROVISIONS ......................................... IX-62
    Sec. 14.01.   Appropriation Transfers ........................................................................ IX-62
    Sec. 14.02.   Transfers for Contract Services.............................................................. IX-63
    Sec. 14.03.   Limitation on Expenditures – Capital Budget........................................ IX-63
    Sec. 14.04.   Disaster Related Transfer Authority....................................................... IX-65
    Sec. 14.05.   Unexpended Balance Authority Between Fiscal Years within
                The Same Biennium .............................................................................. IX-66

AGENCY NON-DISCRETIONARY TRANSFER PROVISIONS ................................ IX-67
    Sec. 15.01.   Reimbursements for Unemployment Benefits ....................................... IX-67
    Sec. 15.02.   Payments to the State Office of Risk Management (SORM)........................ IX-68
    Sec. 15.03.   Contingency Appropriation Reduction ................................................... IX-69
    Sec. 15.04.   Appropriation Transfers: Billings for Statewide Allocated Costs.................... IX-70

LEGAL REPRESENTATION AND JUDGMENTS PROVISIONS................................ IX-70
    Sec. 16.01.   Court Representation and Outside Legal Counsel................................... IX-70
    Sec. 16.02.   Contingent Fee Contract for Legal Services .......................................... IX-71
    Sec. 16.03.   Proceeds of Litigation ........................................................................... IX-72
    Sec. 16.04.   Judgments and Settlements ................................................................... IX-72
    Sec. 16.05.   Incidents Report: State Supported Living Centers
                and State Hospitals................................................................................ IX-74
    Sec. 16.06.   Professional and Legal Services............................................................. IX-74

MISCELLANEOUS PROVISIONS................................................................................ IX-74
    Sec. 17.01.   Contingency Rider................................................................................. IX-74
    Sec. 17.02.   Limitation on Substitution of General Obligation Bond
                Funded Projects..................................................................................... IX-74
    Sec. 17.03.   Interagency Contract to Coordinate Use of PARIS Data to Assist
                Veterans and Achieve Savings for State ................................................ IX-74
    Sec. 17.04.   Payroll Contribution for Group Health Insurance.................................. IX-75
    Sec. 17.05.   Appropriation for Salary Increases for Certain State Employees
                in Salary Schedule C ............................................................................ IX-75
    Sec. 17.06.   Veterans Services at Other State Agencies ........................................... IX-76
    Sec. 17.07.   Agency Coordination for Youth Prevention and Intervention Services............ IX-76
    Sec. 17.08.   Additional Payroll Contribution for Retirement Contribution .......................... IX-76
    Sec. 17.09.   Border Security – Informational Listing ................................................ IX-77

CONTINGENCY AND OTHER PROVISIONS ............................................................ IX-79
Recapitulation – Article IX - General Provisions – General Revenue............................................. IX-99
Recapitulation – Article IX – General Provisions – General Revenue – Dedicated........................ IX-100
Recapitulation – Article IX - General Provisions – Federal Funds................................................. IX-101
Recapitulation – Article IX – General Provisions – Other Funds................................................... IX-102
Recapitulation – Article IX – General Provisions – All Funds....................................................... IX-103

CONTINGENCY PROVISIONS: ARTICLE AND AGENCY INDEX.................................... IX-104

# TABLE OF CONTENTS
(Continued)

**ARTICLE X - THE LEGISLATURE**

Senate ........................................................................................................................ X-1
House of Representatives ........................................................................................... X-2
Legislative Council .................................................................................................... X-4
Uniform State Laws, Commission on ........................................................................ X-5
State Auditor's Office ................................................................................................. X-5
Legislative Reference Library .................................................................................... X-6
Retirement and Group Insurance ............................................................................... X-7
Social Security and Benefit Replacement Pay ........................................................... X-8
Lease Payments ......................................................................................................... X-8
Special Provisions Relating to the Legislature .......................................................... X-8
Recapitulation - Article X - General Revenue ........................................................... X-9
Recapitulation - Article X - Other Funds ................................................................ X-10
Recapitulation - Article X - All Funds ..................................................................... X-11

**ARTICLE XI – SAVINGS CLAUSE** ............................................................................. XI-1

**ARTICLE XII – EMERGENCY CLAUSE** .................................................................... XI-1

(HHSC) in Goal B, Medicaid, and Goal C, Children's Health Insurance Program, HHSC may implement the following quality-based reforms in the Medicaid and CHIP programs:

a.  develop quality-based outcome and process measures that promote the provision of efficient, quality health care and that can be used to implement quality-based payments for acute and long-term care services across delivery models and payment systems;

b.  implement quality-based payment systems for compensating a health care provider or facility participating in the Medicaid and CHIP programs;

c.  implement quality-based payment initiatives to reduce potentially preventable readmissions and potentially preventable complications; and

d.  implement a bundled payment initiative in the Medicaid program, including a shared savings component for providers that meet quality-based outcomes. The executive commissioner may select high-cost and/or high-volume services to bundle and may consider the experiences of other payers and other state of Texas programs that purchase healthcare services in making the selection.

e.  Under the Health and Human Services Commission's authority in 1 T.A.C. Sec. 355.307(c), the commission may implement a Special Reimbursement Class for long term care commonly referred to as "small house facilities." Such a class may include a rate reimbursement model that is cost neutral and that adequately addresses the cost differences that exist in a nursing facility constructed and operated as a small house facility, as well as the potential for off-setting cost savings through decreased utilization of higher cost institutional and ancillary services. The payment increment may be based upon a provider incentive payment rate.

Required Reporting: The commission shall provide annual reports to the Governor's Office of Budget, Planning, and Policy and Legislative Budget Board on December 1, 2015 and December 1, 2016 that include (1) the quality-based outcome and process measures developed; (2) the progress of the implementation of quality-based payment systems and other related initiatives; (3) outcome and process measures by health service region; and (4) cost-effectiveness of quality-based payment systems and other related initiatives.

**47. Texas Office for the Prevention of Developmental Disabilities.** Out of General Revenue Funds appropriated above in Strategy A.1.1, Enterprise Oversight and Policy, the Health and Human Services Commission shall expend an amount not to exceed $200,000 each fiscal year for salaries, travel expenses, and other costs in order to support the Office for Prevention of Developmental Disabilities. Grants and donations for the Texas Office for Prevention of Developmental Disabilities received through the authority provided by Article IX, Sec. 8.01, Acceptance of Gifts of Money, are not subject to this limit and shall be expended as they are received as a first source, and General Revenue shall be used as a second source to support the office.

**48. Supplemental Payments.** It is the intent of the Legislature that when the Health and Human Services Commission calculates supplemental payments, data be collected to provide transparency regarding claims associated with the supplemental payment program. An independent audit of the program, including a review of regional affiliations, uncompensated care claims for both uninsured and insured individuals, and contractual agreements, and a report with findings should be completed and distributed annually on March 1 to the Governor, the Lieutenant Governor, the Speaker of the House of Representatives, the Senate Finance Committee members, the House Appropriations Committee members, and the Legislative Budget Board.

**49. Prevent Eligibility Determination Fraud.** It is the intent of the Legislature that to prevent fraud and to maximize efficiencies, the Health and Human Services Commission shall use technology to identify the risk for fraud associated with applications for benefits. Within the parameters of state and federal law, the commission shall set appropriate verification and documentation requirements based on the application's risk to ensure agency resources are targeted to maximize fraud reduction and case accuracy.

**50. Medicaid Funding Reduction and Cost Containment.**

a.  Included in appropriations above in Goal B, Medicaid, is a reduction of $186,500,000 in General Revenue Funds and $249,349,498 in Federal Funds in fiscal year 2016 and $186,500,000 in General Revenue Funds and $247,220,930 in Federal Funds in fiscal year

2017, a biennial total of $373,000,000 in General Revenue Funds and $496,570,428 in Federal Funds. The Health and Human Services Commission (HHSC) is authorized to transfer these reductions between fiscal years and to allocate these reductions among health and human services agencies as listed in Article II of this Act, pursuant to the requirement to submit a plan included in Subsection (d) of this rider.

b. This reduction shall be achieved through the implementation of the plan described under subsection (d) which may include any or all of the following initiatives:

   (1) Continue strengthening and expanding prior authorization and utilization reviews,

   (2) Incentivize appropriate neonatal intensive care unit utilization and coding,

   (3) Fully implement dually eligible Medicare/Medicaid integrated care model and long-term services and supports quality payment initiative,

   (4) Maximize co-payments in Medicaid programs,

   (5) Increase fraud, waste, and abuse prevention and detection,

   (6) Explore changes to premium structure for managed care organizations and contracting tools to reduce costs and increase efficiency,

   (7) Renegotiate more efficient contracts, including reducing the administrative contract profit margin and establish rebate provisions where possible,

   (8) Develop a dynamic premium development process for managed care organizations that has an ongoing methodology for reducing inappropriate utilization, improving outcomes, reducing unnecessary spending, and increasing efficiency,

   (9) Implement fee-for-service payment changes and managed care premium adjustments that incentivize the most appropriate and effective use of services,

   (10) Improve birth outcomes, including improving access to information and payment reform,

   (11) Increase efficiencies in the vendor drug program,

   (12) Increase third party recoupments,

   (13) Create a pilot program on motor vehicle subrogation,

   (14) Assess options to reduce costs for retroactive Medicaid claims,

   (15) Review the cost effectiveness of including children with disabilities in dental managed care,

   (16) Review and determine the benefits of providing the managed care-organizations with the ability to create a pharmacy lock-in program, and

   (17) Implement additional initiatives identified by HHSC.

c. HHSC shall reform reimbursement methodology to be in line with industry standards, policies, and utilization for acute care therapy services (including physical, occupational, and speech therapies) while considering stakeholder input and access to care. Out of the amount in subsection (a), in each fiscal year at least $50,000,000 in General Revenue Funds savings should be achieved through rate reductions and $25,000,000 in General Revenue Funds savings may be achieved through various medical policy initiatives listed in items (1)-(10), below. If $25,000,000 in savings is not achieved through various medical policy initiatives in fiscal year 2016, the amount of unrealized savings (the difference between $25,000,000 in General Revenue Funds and savings actually achieved in fiscal year 2016) should be achieved through additional rate reductions in fiscal year 2017 while continuing any

initiatives implemented in fiscal year 2016 that have been found to produce savings. HHSC may achieve savings through various medical policy initiatives, taking into consideration the following:

(1) Clarifying policy language regarding co-therapy definition, documentation, and billing requirements,

(2) Clarifying who can participate in therapy sessions in policy that interns, aides, students, orderlies and technicians can participate in therapy sessions when they are directly and appropriately supervised according to provider licensure requirements, but they are not eligible to enroll as providers and bill Texas Medicaid for services,

(3) Consolidate Traditional, Comprehensive Care Program and Home Health Agency therapy policies into one policy,

(4) Require a primary care or treating physician to initiate a signed order or referral prior to an initial therapy evaluation. The initial evaluation may require prior authorization and the signed order or referral must be dated prior to the evaluation,

(5) Require a primary care or treating physician to order the therapy services based on the outcomes of the evaluation,

(6) Clarify medical necessity for therapy services to ensure prior authorization staff who are reviewing requests are using guidelines based on the nationally recognized standards of care,

(7) Require licensed Medicaid enrolled therapists to document and support decisions for continued therapy based on professional assessment of a client's progress relative to their individual treatment plan and in concert with the client's primary care physician and the individual and/or family,

(8) Ensure appropriate duration of services by aligning authorization periods with national standards,

(9) Streamline prior authorization processes, and

(10) Implement policies that ensure services are provided in the most cost-efficient and medically appropriate setting, and implementation of other medical or billing policy changes.

d. HHSC shall develop a plan to allocate the reductions required by Subsection (a) of this rider by taking actions such as those suggested under Subsection (b) and (c) of this rider to the budgets of the health and human services agencies as listed in Chapter 531, Government Code. The plan shall include reduction amounts by strategy and fiscal year and shall be submitted in writing before December 1, 2015 to the Legislative Budget Board, the Governor, and the Comptroller of Public Accounts.

51. **Improve Efficiencies in Benefit Applications.** Out of funds appropriated above, in order to improve efficiencies, the Health and Human Services Commission shall promote online submissions of applications for benefits administered by the agency. HHSC shall develop standards and technical requirements to allow organizations to electronically submit applications. It is the intent of the Legislature that HHSC only expend funds or utilize agency resources to partner with entities whose role in submitting benefit applications has been statutorily established, or with entities that provide in-person assistance using the agency's website for clients.

52. **Dental and Orthodontia Providers in the Texas Medicaid Program.** It is the intent of the Legislature that the Health and Human Services Commission (HHSC) use funds appropriated above in Strategy G.1.1, Office of Inspector General, to strengthen the capacity of the HHSC Inspector General to detect, investigate, and prosecute abuse by dentists and orthodontists who participate in the Texas Medicaid program. Further, it is the intent of the Legislature that HHSC conduct more extensive reviews of medical necessity for orthodontia services in the Medicaid program.